SPAULDING, Appellant, vs. WOOD COUNTY, Respondent.

*April 3—April 30, 1935.*

For the appellant there was a brief by *Herbert A. Bunde* and *Goggins, Brazeau & Graves,* all of Wisconsin Rapids, and oral argument by *Mr. Theo. W. Brazeau* and *Mr. Bunde.*

*Chas. M. Pors* of Wisconsin Rapids, special counsel, for the respondent.

NELSON, J.  For several years prior to 1929, the defendant, hereafter called the county, had employed a county agricultural representative, hereafter called county agent, pursuant to the provisions of sec. 59.87, Stats.  R. A. Peterson was such county agent.  The county board had also appointed a special committee on agriculture.  Sec. 59.87 (9). On May 15, 1929, a meeting of the committee was held for the purpose of adopting a program for the ensuing year.  The program adopted included the project of improving dairy herds through the so-called mail-order system of testing cows.  It was thought that at least five hundred farmers should take advantage of the proposed service.  The testing of cows through the mail-order system was evidently carefully considered by Mr. Peterson and the agricultural committee.  For about two years prior to November 15, 1929, the plaintiff had been employed as a cow tester in Clark county.  Some time prior to October 21, 1929, Mr. Peterson and several members of the committee had interviewed the plaintiff at Neillsville for the purpose of learning more about the mail-order system of testing cows, and no doubt of ascertaining whether the plaintiff might be interested in performing similar work in Wood county.  Prior to the interview mentioned, Mr. Peterson had held many meetings with the farmers of Wood county for the purpose of selling to them the idea of the mail-order system of testing their cows.  On October 21, 1929, Mr. Peterson wrote the plaintiff that he had "checked up on our association program and find that we have two hundred and fifty-seven members listed as a result of our drive, in addition to a number of prospects;" that he was confident that the three hundred mark could easily be reached by December 1; that the test was finding

general favor among farmers, bankers, and people generally, and that he was confident that it would succeed in a big way and that he was pleased that the plaintiff would take charge of the work in Wood county. He suggested that the plaintiff take up the work about November 15th, as that would give ample time to get the laboratory fitted up in nice shape. He requested the plaintiff to check over the list of equipment that would be needed, and either order it himself or send the list to him. He suggested that it might be well to purchase the necessary materials on a time basis so that the association could finance the deal itself. The plaintiff came to Wisconsin Rapids shortly before November 15th to start work. Prior to that date the terms of employment had evidently been agreed upon, for on that day Mr. Peterson wrote the plaintiff as follows:

"In regard to our previous understanding relative to the terms of our contract, it is the understanding that you are to have charge of the Dairy Record Association of Wood County, in co-operation with the county agent's office.

"According to the arrangement made, you are to start work November 15, 1929, and are to receive a salary of $150.00 per month for handling an association of 250 members or less. You are to receive $12.50 per month for each additional twenty-five members under test above the 250 base membership.

"You are to receive mileage at the rate of 6¢ per mile for necessary automobile service in connection with field work for the first year of the association work. It is understood that at that time an analysis of the condition of the association will be made and adjustments made accordingly."

In his report to the county board for the year ending November 1, 1929, the county agent said:

"In view of the importance of testing cows for production and since it is also important that a large number of herds be tested, the mail order system was adopted as a part of the dairy development program. A series of 53 meetings were held in all parts of the County at which testing, feeding, and

other dairy problems were discussed. 220 herd owners signed up to test their herds in the mail order system, and 50 others sent in cards signifying their interest. An up to date laboratory is being set up in the building next to the County Agent's office at Wisconsin Rapids that will start the test of the first herds about November 25th. An experienced and well qualified tester, Mr. Willard Spaulding, will have charge of the testing work, which will be operated as a project from the County Agent's office under the supervision of the Agricultural Committee. The Dairy Record Association will be the official name for the organization. New members are coming in daily, and it is expected that close to 300 herds will be entered by the first of the year. The mail order system is simple, easy, accurate, low in cost, and gives information on production and feeding to the herd owners, without publicity."

That report was accepted and placed on file.

The association plan set up by the county agent and the committee required each farmer who subscribed for the service to pay $4, and in addition to pay $1 per year for each cow tested. The association was known as the "Dairy Record Association." All moneys paid to it were deposited in the First National Bank of Wisconsin Rapids in the name of "Dairy Record Service." None of such funds was ever paid into the county treasury. Checks against the account were issued by the secretary of the county agent. For a time the funds belonging to the association were apparently sufficient to pay the salary of the plaintiff and certain incidental expenses, but as time went on the association's membership fell off until only about forty remained at the close of the year 1932. The plaintiff thereupon tendered his resignation to take effect January 15, 1933. At that time a considerable sum was due him for salary and mileage. Considerable testimony was adduced tending to show that the members of the county board knew that the plaintiff was employed by the county agent and the committee, and that the contract entered into with the county agent was ratified by the county.

The trial court found that the county agent and the committee were authorized to employ the plaintiff as a cow tester for the association, and to fix his compensation at the sum of $150 per month, and six cents per mile for the use of his car, to be paid out of the fees contributed by the members of the association; that they had no authority to employ him at the expense of the county; that the county itself had no authority to employ him or to bind itself to pay his salary; and that, since the county lacked the power to employ him at the expense of the county, it could not adopt or ratify the act of its county agent and special committee on agriculture, even if they intended that the county, rather than the association, should employ him.

In our view the only question which need be determined is whether the county had authority to employ a cow tester at the expense of the county.

The plaintiff contends, among other things, that the court erred in holding that the county had no authority to employ him as a cow tester.

It is conceded that the county has only such authority as is conferred upon it by statute. Counties are purely auxiliaries of the state and can exercise only such powers as are conferred upon them by statute, or such as are necessarily implied therefrom. 1 Dillon, Mun. Corp. (6th ed.), § 37; *Frederick v. Douglas County,* 96 Wis. 411, 417, 71 N. W. 798.

It is conceded that no statute of this state expressly authorizes a county to employ a cow tester at county expense. The plaintiff, however, contends that such power is impliedly given by sec. 59.87, subs. (1), (2), and (3). Sub. (1) provides:

"For the purpose of aiding in the agricultural development of the several counties in the state, any county is hereby authorized, through its county board, to establish and main-

tain an agricultural representative in accordance with the provisions of this section."

That subsection merely authorizes a county to establish and maintain an agricultural representative.

Sub. (2) specifies the duties of an agricultural representative which are to be performed under the direction and supervision of the special committee on agriculture.

Sub. (3) authorizes the county board to raise by tax levy or otherwise such moneys as may be deemed sufficient to cover the share of the county in the partial maintenance of agricultural development in such county, under the supervision of such agricultural representative, and for such other extension work as is provided for in an act of the congress, approved May 8, 1914, entitled: "An act to provide for co-operative agricultural extension work between the agricultural colleges in the several states receiving the benefits of an act of congress approved July second, eighteen hundred and sixty-two, and of acts supplementary thereto, and the United States department of agriculture." That subsection authorizes the raising of money for the purpose of fostering the work of the county representative and other authorized extension work. That subsection does not in our opinion impliedly authorize a county to hire a cow tester at the expense of the county. While sec. 59.01 authorizes a county "to make such contracts and to do such other acts are are necessary and proper to the exercise of the powers and privileges granted and the performance of the duties charged upon it by law," nothing is found in sec. 59.87 from which the asserted authority to hire a cow tester reasonably can be implied or held "necessary and proper" in connection with establishing or maintaining an agricultural representative. It has been held that if there be a fair and reasonable doubt as to an implied power it is fatal to its being. *City of Fort Scott v. W. G. Eads Brokerage Co.* 117 Fed. 51 (*certiorari*

denied, 187 U. S. 647, 23 Sup. Ct. 846). In *Blades v. Hawkins,* 240 Mo. 187, 112 S. W. 979, 981, 144 S. W. 1198, it was said:

"The courts are conservative in implying powers not expressly given. One limitation imposed by law on these implications is that no power will be implied to belong to a public corporation unless it is cognate to the purpose for which the corporation was created."

It is our conclusion that the circuit court correctly held that the county had no authority to employ a cow tester at the expense of the county.

It is unnecessary to review the evidence adduced for the purpose of showing that the county ratified the acts of its agents who employed the plaintiff, since the county could not ratify what it had no authority to do. *Trester v. Sheboygan,* 87 Wis. 496, 58 N. W. 747; *Koch v. Milwaukee,* 89 Wis. 220, 62 N. W. 918; 1 Dillon, *supra,* § 797.

Nor is it necessary particularly to consider the finding of the court, which in effect found that it was understood by the plaintiff, the county agent, the committee, and the county board that the salary and expenses of the plaintiff were to be paid out of the fees paid by the farmers belonging to the association. We may say, however, that if it were necessary to consider that finding, the testimony, in our opinion, is ample to support it. In view of the fact that the judgment must be affirmed because of the lack of authority on the part of the county to employ a cow tester at the expense of the county, no useful purpose would be served by discussing other questions raised.

*By the Court.*—Judgment affirmed.