STATE EX REL. SELL and another, Appellants, v. MILWAUKEE COUNTY and others, Respondents.

*No. 234. Argued September 30, 1974.—Decided October 29, 1974.*
(Also reported in 222 N. W. 2d 592.)

220

For the appellants there was a brief by *Brian A. Jeffrey* and *Steven H. Steinglass,* both of Milwaukee, and oral argument by *Mr. Steinglass.*

For the respondents there was a brief by *Robert P. Russell,* corporation counsel, and *Gerald G. Pagel,* assistant corporation counsel, and oral argument by *Mr. Pagel.*

WILKIE, C. J.   This appeal is from an order denying a petition for a writ of mandamus sought to compel Milwaukee county, the board of supervisors of Milwaukee, the board of public welfare of Milwaukee county and two officials of the department of public welfare to provide such general relief to plaintiffs "as may be reasonable [and] necessary under the circumstances and as required by secs. 49.02 (1) and 49.02 (2), Wis. Stats. (1971)." Plaintiffs Todd Richard Sell and his wife Olivia Sell were denied relief solely for refusal to comply with a department rule which provided:

"In General Assistance cases automobiles, motorcycles, trucks, etc., are to be sold, except where the assistance is temporary, in which case the plates and title will be turned over to the department; or where a specific budgetable income is directly traceable to the continued use of such vehicle; or in other emergency situations. In Social Security Aids, the department will follow the policy of the State Department of Public Welfare."

It is conceded by the defendants-respondents that the sole reason plaintiffs-appellants were denied relief was their failure to surrender their car license plates and title as provided for by the department rule.

The sole issue presented here is the validity of that rule as against the contention that the county, by invoking that rule, failed to furnish relief to the plaintiffs as eligible dependent persons within Milwaukee county, pursuant to sec. 49.02 (1) and (2), Stats. We hold that this rule, as applied by the department as a flat prerequisite to even temporary assistance, violates sec. 49.02 (1) and (2).

This appeal reaches this court after the petition for a writ of mandamus resulted in an alternative writ, and in a return being filed on behalf of all the defendants-respondents. From the petition it appears that the Sells are residents of the city and county of Milwaukee. Todd owned a 1965 Oldsmobile purchased for $100 on November 26, 1972. He became unemployed on February 1, 1973, and thereafter used the car to look for new work. He remained unemployed, however, at the time the writ was filed. Olivia was pregnant, having an expected delivery date of March 2, 1973. The alternative writ alleges she needed the car to have access to medical care during the final month of her pregnancy. On February 9, 1973, the Sells applied for general relief to the Milwaukee county department of public welfare and received an emergency food voucher for $10.20. On February 16th they received another such voucher but were told they would not receive any further assistance until they surrendered to the department their car title and license plates. In the return filed by defendants-respondents, the county and county officials denied that the Sells are dependent persons eligible for relief and denied that refusal to provide the Sells with relief is illegal in any respect.

At the hearing before the trial court, defendants' attorney conceded that the sole reason plaintiffs were denied relief was their failure to surrender their car license plates and title and that the county welfare department had not conducted a factual investigation as to whether the Sells otherwise qualified for relief. The defendants took the position that the Sells were not dependent persons because the fact of their automobile ownership conclusively established nondependency in the eyes of the department. The trial court found that the Sells owned a car valued "at, or slightly less than, one hundred dollars" and "that such property can be presently converted into cash money through its sale."

Sec. 49.02 (1), Stats., provides, in part, "Every municipality shall furnish relief only to all eligible dependent persons therein." Under sec. 49.51 (2) (a), the Milwaukee county department of public welfare administers the relief program in Milwaukee county, and thereby assumes the "functions, duties and powers" imposed on municipalities by sec. 49.02 (1).[1] We have previously held that failure to provide relief in accordance with the command of the statute is the proper subject for the writ of mandamus.[2]

The disputed rule provides for denying any temporary assistance until an applicant for relief has transferred to the department his car title and license plates, but the relief statute, sec. 49.02 (1), requires relief to be granted to "all eligible dependent persons." It is clear that by requiring the transfer as a preliminary to the granting of even temporary relief, the department has spelled out in rule form an unauthorized and illegal prerequisite to the exercise by welfare authorities of their statutory duty to determine whether or not a person seeking tem-

[1] See State ex rel. Arteaga v. Silverman (1972), 56 Wis. 2d 110, 115, note 3, 201 N. W. 2d 538.

[2] Id. at page 116.

porary assistance is, in fact, a dependent person and eligible for relief. The dispensation of relief is entirely governed by statute and in this respect we said, as early as 1935, in *Spaulding v. Wood County:*

"It is conceded that the county has only such authority as is conferred upon it by statute. Counties are purely auxiliaries of the state and can exercise only such powers as are conferred upon them by statute, or such as are necessarily implied therefrom. 1 Dillon, Mun. Corp. (6th ed.), sec. 37; *Frederick v. Douglas County,* 96 Wis. 411, 417, 71 N. W. 798." [3]

As the court said in *State ex rel. Arteaga v. Silverman:*

". . . The determination of whether applicants for relief, under sec. 49.02, are 'dependent persons' is a question of fact that is not left to the discretion of local welfare officials. *Outagamie County v. Town of Brooklyn* (1962), 18 Wis. 2d 303, 311, 312, 118 N. W. 2d 201." [4]

Under sec. 49.01 (1) and (4), Stats., the factual determination of dependency status must include a finding as to the value of the money, income, property, or credit presently available to the applicant, as well as a determination of the applicant's level of need for the services and commodities specified in sec. 49.01 (1). If the applicant's need exceeds the value of his "presently available" assets, relief must be furnished. The amount and kind of relief, however, is up to the discretion of welfare officials. [5] Thus, the Milwaukee county officials could

---

[3] (1935), 218 Wis. 224, 228, 260 N. W. 473.

[4] (1972), 56 Wis. 2d 110, 115, 116, 201 N. W. 2d 538. In this case the court held that the Milwaukee county welfare department could not refuse to furnish relief to a person who met all the statutory requirements, merely because he had voluntarily quit his last job.

[5] Sec. 49.01 (1), Stats., provides in part: "The relief furnished, whether by money or otherwise, shall be at such times and in such amounts, as will in the discretion of the relief official or agency meet the needs of the recipient and protect the public."

take into account the value of the applicant's "presently available" assets in deciding how much relief to provide. But here, rather than factually determining the value of all of the plaintiffs' assets and the level of plaintiffs' need, the department refused to provide relief solely because of plaintiffs' automobile ownership. The department thus failed to perform its statutory obligations. The Sells were entitled to relief despite their automobile ownership, if their level of need exceeded the value of their assets. The department's policy is inconsistent with the statute which does not require relief recipients to have no assets whatsoever; rather, it only requires the value of the assets to be insufficient to cover the recipient's need.[6]

This analysis is supported by *Outagamie County v. Brooklyn*.[7] The recipient of emergency medical relief owned a car purchased two years previous for $595. Since there was no evidence that it was presently a salable asset, the court said it could not be counted to determine the recipient's status as a dependent. However, the court said that even if it were a salable asset, its ownership could not deprive the recipient of dependency status where her need was $1,214. Thus the court indicated that ownership of an asset did not automatically disqualify

---

[6] Under older Wisconsin law the statute required officials to furnish relief to "poor persons" in need without specifying how the determination was to be made. Relief officials thus had great discretion, and the court held at least in nonemergency situations that relief could be refused where the person had any salable assets at all. *Rhine v. Sheboygan* (1892), 82 Wis. 352, 354, 52 N. W. 444. *See* Annot. (1935), 98 A. L. R. 870. Status as "poor person" (discussion of Wisconsin cases at pages 880, 881). However, ch. 49, Stats., was completely revamped by ch. 585, Laws of 1945, and under the new sec. 49.01 officials no longer have such discretion. The possession of any salable assets can no longer be considered an absolute bar to receiving relief; the assets' value must exceed the level of need.

[7] (1962), 18 Wis. 2d 303, 314, 118 N. W. 2d 201.

a relief applicant as a dependent person; the asset's value must exceed the level of need.

Additionally, the facts in the case at bar closely resemble those in the recent case of *State ex rel. Arteaga v. Silverman,*[8] where the Milwaukee county welfare department refused to furnish relief pursuant to a department rule, despite the applicant's qualification under all statutory criteria. The department rule in *Arteaga* provided that applicants who were unemployed as a result of voluntary termination of employment, were ineligible for relief. The court held that where the applicant met all statutory requirements, the department had an obligation to furnish relief, despite the applicant's past conduct.[9] As in the instant case, the department required relief applicants to satisfy criteria beyond those contained in the statute; the additional requirements were struck down. Here, as in *Arteaga,* the department should be required to conform to the statute.

Defendants try to justify their refusal to furnish relief to plaintiffs on two grounds: the presumption of administrative regularity, and sec. 49.06, Stats.

1. *Presumption of administrative regularity.* Defendants argue that the presumption of administrative regularity compels a conclusion that the department acted properly in denying relief to plaintiffs. In *Outagamie County v. Brooklyn* [10] this court held that in the absence

---

[8] (1972), 56 Wis. 2d 110, 201 N. W. 2d 538.

[9] The court indicated, however, that a pattern of voluntary terminations which might amount to a violation of sec. 49.002, Stats., could be a sufficient reason for refusal to provide relief.

[10] (1962), 18 Wis. 2d 303, 313, 118 N. W. 2d 201. This case involved a suit for reimbursement under sec. 49.11, Stats., brought by the plaintiff county which paid emergency medical expenses of a person with legal settlement in the defendant county. Defendant denied liability on the ground that plaintiff had improperly determined the relief recipient to be a dependent. The court held that since defendant produced no contrary evidence, the plaintiff's determination was presumptively valid.

of contrary evidence the decision to furnish relief is presumed to have been based on a proper determination of the recipient's dependency. Arguably the same presumption should attach to a decision to deny relief. However, as the court said in *Outagamie County:*

". . . The presumption is a rebuttable one, and belongs to that category of presumptions which disappear entirely when any evidence is admitted to the contrary of the fact presumed." [11]

Here, defendants' concessions in the lower court constitute contrary evidence. There is no dispute as to why plaintiffs were denied relief. The decision was based solely on plaintiffs' refusal to surrender their license plates. The department did not investigate as to whether plaintiffs otherwise qualified, due to its policy that car ownership conclusively establishes nondependency. In light of these concessions, the presumption of administrative regularity disappears. It is only necessary where the court must judge the validity of an administrative decision in the absence of any evidence as to how the decision was made or what factors were considered.

This argument must be rejected for an additional reason. In the lower court defendants stipulated to certain facts and said there was no need for any factual hearing:

*"The Court:* . . . I was asking you whether or not the denial [that plaintiffs are dependents] is based merely on their refusal to assign the title of the car or whether it is based upon facts which might establish that they are not dependents other than that. If there is a factual dispute, then the case has to be set down for a hearing.
*"Mr. Pagel:* There isn't any factual dispute."

The defendants' attorney cannot be allowed to argue on appeal therefore that because there are insufficient facts in the record, the department's determination must be presumed valid. Defendants' attorney bases his case

---

[11] *Id.*

here on the validity of the department's flat rule against furnishing relief to car owners. His attempt now to invoke the presumption of administrative regularity therefore is improper.

2. *Sec. 49.06, Stats.* Defendants attempt to rely on sec. 49.06, to justify their refusal to provide relief to plaintiffs. This contention may be dismissed easily. Sec. 49.06 provides in pertinent part:

". . . Where persons are not in fact dependent, as defined by this chapter, but who, if they converted their limited holdings, real or personal, would, by reason of a fallen market or by reason of economic or other conditions, be required to suffer a substantial loss, then and in that event such persons shall be permitted, by proper assignments to the county or municipality, to render themselves qualified to receive relief. The county or municipal agency may sell, lease or transfer the property, or defend and prosecute all actions concerning it, and pay all just claims against it, and do all other things necessary for the protection, preservation and management of the property."

This section gives welfare officials discretion to require relief applicants to assign property to the department where immediate sale would produce "substantial loss" to the applicant. However, defendants' reliance on this section is misplaced because sec. 49.06, Stats., does not even apply unless relief applicants have first been found "not in fact dependent." Thus the section cannot be considered authority for a department policy that tries to circumvent the very need for this factual determination.

We therefore reverse the order of the lower court and remand in order that the lower court can issue a writ of mandamus compelling Milwaukee county department of public welfare to determine plaintiffs' dependency in fact within the meaning of sec. 49.01 (4), Stats., and to furnish relief to plaintiffs if they so qualify.

*By the Court.*—Order reversed and cause remanded for further proceedings not inconsistent with this opinion.

ROBERT W. HANSEN, J. *(dissenting)*. Grammar controls even kings, a seventeenth century playwright suggested.[1] Certainly, grammar often determines the meaning of a sentence. Punctuation marks used, as well as words used, are not to be disregarded in construing what is meant or was intended by a statute or rule. In construing the rule of the Milwaukee county welfare department here involved, initial attention should be focused on a semicolon (here underlined and identified for emphasis), midway in the rule which reads:

"*No. 72–109.* In General Assistance cases, automobiles, motorcycles, trucks, etc., are to be sold, except where the assistance is temporary, in which case the plates and title will be turned over to the department; [*NOTE: the semicolon referred to*] or where a specific budgetable income is directly traceable to the continued use of such vehicle; or in other emergency situations. . . ."[2]

Thus phrased and thus punctuated, the rule sets forth, before the semicolon, two general policies: (1) Where permanent or continuing general assistance is provided, automobiles are to be sold; and (2) where temporary assistance is provided, auto plates and titles are to be turned over to the department. However, such flat requirements are modified by what follows the semicolon. As to both permanent and temporary assistance recipients, there are two exceptions set forth: (1) Where a specific budgetable income is directly traceable to the

[1] *Les Femmes Savantes* (1672), act II, sc. 6, the exact quote reading, "Grammar, which knows how to control even kings." Quoted in Bartlett's Familiar Quotations (14th ed.), page 361–b.

[2] Memorandum, No. 72–109, promulgated January 30, 1973, by Milwaukee county board of welfare.

continued use of such vehicle; and (2) in other emergency situations. As applied to an applicant for temporary assistance, as was the appellant here, the rule requires that he turn over his auto plates and titles unless (1) there is a specific budgetable income, or (2) there is some other emergency situation warranting the continued operation of his automobile by the applicant.

In giving the rule a differing construction, the majority opinion has repunctuated the rule. As the writer sees it, what the majority opinion does is to relocate the semicolon so that the rule, as revised by the court majority, would read:

"*No. 72–109* [Revised and repunctuated] In General Assistance cases, automobiles, motorcycles, trucks, etc., are to be sold; [*NOTE: the semicolon relocated*] except where the assistance is temporary, in which case the plates and title will be turned over to the department, or where a specific budgetable income is directly traceable to the continued use of such vehicle, or in other emergency situations. . . ."

By thus transposing one semicolon and one comma, the majority finds and construes the rule to set down one general policy with three exceptions to it. The general policy becomes that of requiring the sale of an automobile where permanent assistance is granted. The three exceptions become: (1) Applications for temporary assistance where plates and title are to be turned over; (2) where a budgetable income is directly traceable to the continued use of the vehicle; and (3) in other emergency situations. With the rule thus revised and repunctuated, the majority construes it as a flat requirement that applicants for temporary assistance turn over auto plates and title, with no exceptions and no provisions for special needs warranting a specific budget item for continued operation of the car and no provisions for emergency situations requiring continued use of an automobile. The majority strikes down the rule thus construed and, in

the writer's opinion, thus repunctuated, as beyond the provisions of ch. 49 of the statutes. That might well be, but the conclusion, in this writer's opinion, does not fit or apply to the rule as written and punctuated by the county welfare board.

The challenge to the rule here does not relate to whether or not an applicant is indigent and thereby entitled to receive temporary public assistance.[3] The rule, as to applicants for temporary relief, requires only that the auto plates and title to the car be turned over to the department, to be held until an application and determination is made that such applicant is entitled to permanent or continuing assistance. Operation, not ownership of the vehicle, is involved. Where there is no specific budgetary allowance for automobile operation or no emergency situation, the applicant may own, but may not operate the automobile or vehicle involved. Where there is a specific budgetary allowance based on need to operate, or an emergency situation, he may both own and operate the motor vehicle involved. So the value of the car, on this issue and under this rule, is immaterial. Here the trial court found the applicant's automobile to be worth one hundred dollars. Value of a possession may well be relevant on the question of indigency, but it is not involved in the operation of the "turn over title and license" rule. Neither a junkyard clunker nor a late model car can run on air. This rule prohibits the operation of an automobile by an applicant for temporary assistance, in the absence of budgetary allowance or emergency situation, and the reason for and result of the rule have nothing to do with what such automobile might sell for at a used car lot.

---

[3] For definition of indigency or dependency, *see:* Sec. 49.01 (4), Stats. *See also:* Sec. 49.06 relating to equities in property, as construed and applied on question of indigency in *Outagamie County v. Brooklyn* (1962), 18 Wis. 2d 303, 314, 118 N. W. 2d 201.

All that the rule proscribes is the continued operation of a motor vehicle by one receiving temporary assistance where, except for emergency situations, there is no budgetary allowance for public payment of the costs of such operation. It is a condition attached to the receiving of temporary assistance, analogous to conditions such as assignment to a work project or referral to private employment or job training, upheld by this court as reasonable conditions with which recipients of public assistance must comply.[4] As this court has said as to assignments for work or training: ". . . Such activity and direction by welfare authorities tends to implement the declarations set forth in sec. 49.002." [5] Where conditions are spelled out or required by ch. 49 or reasonably related to its proper implementation, those receiving public assistance, temporary or otherwise, must comply with them.[6]

Is it reasonable for a county welfare board, statutorily directed to furnish relief only to all eligible dependent persons in its area, to attach as a condition to the receipt of temporary assistance the restriction that the recipient may not operate his automobile unless there is a budgetary allowance for the cost of such operation or an emergency situation exists? The writer would answer that such rule is not only reasonably related to the proper implementation of the responsibility assigned, but is

[4] *State ex rel. Arteaga v. Silverman* (1972), 56 Wis. 2d 110, 118, 201 N. W. 2d 538, this court holding: ". . . While a 'dependent person' is entitled to general relief, he may be assigned to a work project or referred to private employment or job training. . . ." and also making clear that ". . . recipients that refuse a bona fide offer of employment without good cause, or who accept and inadequately perform through 'wilful neglect' will be considered to have the available means of self-support and shall have their general relief discontinued. . . ."

[5] *Id.* at page 118.

[6] *Id.* at page 118, this court holding: "Sec. 49.002, Stats., establishes conditions, and those receiving general assistance must comply with them. . . ."

required by the provisions of the state Public Assistance Act, ch. 49. The definition of public assistance or relief in the act is as follows in sec. 49.01 (1), Stats.:

" 'Relief' means such services, commodities or money as are reasonable and necessary under the circumstances to provide food, housing, clothing, fuel, light, water, medicine, medical, dental, and surgical treatment (including hospital care), optometrical services, nursing, *transportation,* and funeral expenses, and include wages for work relief. . . . The relief furnished, whether by money or otherwise, shall be at such times and in such amounts, as will *in the discretion of the relief official or agency meet the needs of the recipient and protect the public."* (Emphasis supplied.)

The welfare agency, here the county welfare board,[7] is directed to provide "transportation" for an applicant for assistance, temporary or permanent, but only where, in the discretion of the agency, it will "meet the needs of the recipient and protect the public." Publicly provided funds may be used to provide the costs of transportation, which includes or can include the expenses of automobile operation, but they are to be provided only on a discretionary basis, considering the special needs of the recipient and with regard for protecting the public interest. The rule challenged properly refers to "specific budgetary allowance" for car operation, for the statute clearly authorizes the department, in its discretion, to make such allowance for such purpose. All the rule adds is that, except for emergency situations, the recipient of temporary assistance may not operate his automobile if no such budgetary allowance is made.

The majority opinion holds that, even where no emergency situation exists and even though no specific budgetary allowance is provided for the operation of an

---

[7] Sec. 49.02 (1), Stats., provides in part: "Every municipality shall furnish relief only to all eligible dependent persons therein . . . ." Sec. 49.51 (2) (a) provides that the Milwaukee county department of public welfare administers the public assistance program in Milwaukee county.

automobile, the applicant for and recipient of temporary assistance may continue to drive his automobile. Where is the money to come from for gasoline and maintenance? Obviously, with no specific budgetary allowance made, it can come only from public welfare allotments for other purposes: food, housing, clothing, light, fuel, water, medicine, etc. Money paid by the public to put cornflakes on the table and milk in the stomachs of the children will be spent to put gasoline in the tank and rubber on the wheels. Such diversion of public moneys allocated for specific purposes is not only permitted, but required, by the majority opinion, giving the applicant for temporary welfare the right to keep on driving his car even though no funds are provided for such purpose. The wife and children may enjoy the ride with papa in the car that the majority holds he, as an applicant for temporary assistance, is entitled to continue to drive, but they will predictably return to a colder house and an emptier table for it is only from relief allowances made for essentials such as fuel, food and shelter that the money to keep the car going can come. The writer would find the rule, as punctuated and promulgated by the county welfare board, to have a reasonable basis in sound public policy, reasonably related to the proper implementation of the public assistance statute, and required by its express provisions.

I am authorized to state that Mr. Justice LEO B. HANLEY and Mr. Justice CONNOR T. HANSEN join me in this dissent.