MERCY MEDICAL CENTER OF OSHKOSH, INC., Appellant, v. WINNEBAGO COUNTY, Respondent.*

*No. 356. Argued February 27, 1973.—Decided April 20, 1973.*
(Also reported in 206 N. W. 2d 198.)

* Motion for rehearing denied, with costs, on June 29, 1973.

For the appellant there was a brief by *Nolan, Engler, Yakes & Curtis, S. C.,* of Oshkosh and oral argument by *Gary R. Yakes.*

For the respondent there was a brief and oral argument by *Edward J. Salzsieder,* Winnebago county assistant corporation counsel.

HALLOWS, C. J.   The issue raised is whether a county must reimburse a hospital for emergency care given to a patient who does not want public assistance (although she is unable to pay for the hospital services) and refuses to cooperate with county officials in charge of public assistance so as to allow the county to charge back any public assistance given to the place of the patient's legal settlement.

The facts are not in dispute. In the early morning hours of January 3, 1970, Linda K. Wilkinson was admitted to the hospital suffering from a self-induced incomplete abortion and requiring immediate and indispensable hospitalization and care. Miss Wilkinson at the time was unemployed, had no health insurance or liquid assets, and had approximately $5 in cash in her purse. She had driven with friends into Oshkosh from Green Bay, but the place of her residence is not clear in the record.

The hospital served the county with a written notice of Miss Wilkinson's injury and treatment pursuant to the requirements of sec. 49.02 (5), Stats.[1] The bill amounted to $528.87. Having received the notice, Dan Mac Arthur, an employee of the county's department of social services, visited Miss Wilkinson at the hospital. She told him she did not desire any welfare and wished to be left alone, as she intended to pay the bill herself. On the basis of this information, the county denied liability. Thereafter, the hospital commenced an action against Miss Wilkinson and on June 1, 1971, took a judgment against her, which remains unsatisfied. The hospital then commenced this suit against the county.

At the trial Miss Wilkinson, in testifying as to her financial status, stated that prior to the entry into the hospital she was a go-go dancer earning from $150 to $400 per week depending upon the type of act. After her discharge from the hospital she concluded her personal

---

[1] "49.02 **Relief administration.** . . .

"(5) The municipality or county shall be liable for the hospitalization of and care rendered by a physician and surgeon to a person entitled to relief under this chapter, without previously authorizing the same, when, in the reasonable opinion of a physician, immediate and indispensable care or hospitalization is required, and prior authorization therefor cannot be obtained without delay likely to injure the patient. There shall be no liability for such care or hospitalization beyond what is reasonably required by the circumstances of the case, and liability shall not attach unless, within 7 days after furnishing the first care or hospitalization of the patient, written notices by the attending physician and by the hospital be mailed or delivered to the official or agency designated in accordance with this section, reciting the name and address of the patient, so far as known, and the nature of the illness or injury, and the probable duration of necessary treatment and hospitalization. Any municipality giving care or hospitalization as provided in this section to a person who has settlement in some other municipality may recover from such other municipality as provided in s. 49.11."

problems stemmed from this line of work and decided not to resume dancing. She was unsuccessful in obtaining other employment but she did work sporadically cleaning houses or as a part-time baby-sitter. She lived with a boy friend who provided room and board and occasionally she received some money from an aunt in Indiana who was caring for her child. In spite of her financial condition, Miss Wilkinson refused to make an application for general welfare.

Under sec. 49.02 (5), Stats., a county is liable for the hospitalization and care rendered by a physician or surgeon to a person entitled to relief under ch. 49, Stats., without previous authorization when in the reasonable opinion of the physician immediate and indispensable care or hospitalization is required and authorization therefor cannot be obtained without delay likely to injure the patient. This section also provides that there is no liability for care or hospitalization beyond what is reasonably required, and liability shall not exist unless within seven days of furnishing the first care or hospitalization written notice by the hospital or surgeon giving required information is mailed to the county. There is no dispute that an emergency existed, Miss Wilkinson needed immediate hospitalization, there was no previous authorization of the service by the county, and a proper notice of the rendering of the service was given to the county. The issue is what is meant by the words in the statute, "a person entitled to relief under this chapter."

Although the trial court stated the statute contemplated a situation "of emergency treatment required for an individual receiving public assistance in accordance with the provisions of chapter 49," we take this to mean not that the person must actually be receiving public assistance but rather that the person must be determined eligible in order to receive general assistance subsequent to the rendering of emergency relief. Thus we construe sec. 49.02 (5), Stats., to authorize emergency relief with-

out the county's previously authorizing the same for a person not then receiving general assistance. But the question is whether that person must subsequently apply for general relief under ch. 49 or whether the liability of the county for such relief is excused when the person otherwise meeting the requirements of the statute for general relief refuses to make an application therefor.

In sec. 49.01 (7), Stats., "eligible" or "eligibility" is defined as "a dependent person who has continuously resided for one whole year in this state immediately prior to an application for relief except that temporary assistance including medical care may be granted during the initial year to meet an emergency situation . . ." By sec. 49.01 (4) a "dependent person" or "dependent" is defined as "a person without the present available money or income or property or credit, or other means by which the same can be presently obtained, sufficient to provide the necessary commodities and services specified" as "relief," one item of which is hospital care.

The county takes the position that a person is not entitled to relief until his eligibility is determined and that it has no duty to determine entitlement unless the person makes an application for general relief and gives sufficient information to allow the county giving the care or hospitalization to charge back the cost thereof to the municipality of the person's legal settlement. Since Miss Wilkinson refused to make such an application, the county takes the position she is not "a person entitled to relief" and it has no liability for the hospital emergency service furnished her.

This section can mean one of two things for the purpose of emergency medical relief: (1) That a person is eligible if the facts show she would receive general relief if she would make the application, or (2) the more strict rule of interpretation, that the person must actually be receiving or subsequently receive relief after her entitlement has been determined for the purpose of granting

general relief. We find no requirement in sec. 49.02 (5), Stats., that an application must be made or the information on legal settlement must be given as a condition precedent to the liability of the county for emergency hospital relief. *See Holland v. Cedar Grove* (1939), 230 Wis. 177, 282 N. W. 111, rehearing denied, 282 N. W. 448; *Davis v. Town of Scott* (1884), 59 Wis. 604, 18 N. W. 530; *McCaffrey v. Town of Shields* (1882), 54 Wis. 645, 12 N. W. 54. The only express condition precedent to the county's liability is a notice to be given to it within seven days after furnishing hospitalization. The hospital's right to recover under this section should not be conditioned upon the recipient's subsequent action or inaction or even refusal to apply under ch. 49 for general relief which she does not want.

Availability of hospital emergency service may well be at stake. A hospital should not be put in the position of negotiating over payment for its services as a condition precedent to rendering emergency services. Our health-conscious society and the government's interest in extensive health care for young and old alike demands that emergency service by doctors and hospitals shall be promptly rendered to those in need without regard for immediate payment or security therefor. The best traditions of the medical and hospital professions have recognized this. It is quite true that at common law there existed a distinction in torts between misfeasance and nonfeasance, and a rule became established that no liability would attach to the failure to intervene in an emergency. *See* Prosser, *Law of Torts* (3d ed. 1964), 334; Restatement, *Torts* 2d, p. 116, sec. 314 (1965). From this, a corollary rule developed that a hospital was under no duty to accept a patient. *See Birmingham Baptist Hospital v. Crews* (1934), 229 Ala. 398, 157 So. 224; *see also* Note, 40 Texas L. Rev. (1962), 732; Recent Developments, 14 Stanford L. Rev. (1962), 910.

Dissatisfied with such a rule, some courts have carved out exceptions in emergency cases. Thus where the hospital has detained the injured party for some time before rejecting him and sending him elsewhere, an acceptance of the patient was deemed established. *Methodist Hospital v. Ball* (1961), 50 Tenn. App. 460, 362 S. W. 2d 475; *New Biloxi Hospital, Inc. v. Frazier* (1962), 245 Miss. 185, 146 So. 2d 882. Other courts have pinned liability for rejection on the hospital's giving some aid and releasing an injured party, thus erroneously giving him reason to believe the emergency had passed. *See Bourgeois v. Dade County* (Fla. 1956), 99 So. 2d 575; *Reeves v. North Broward Hospital District* (Fla. App. 1966), 191 So. 2d 307. Other courts have more directly found a duty to admit persons in emergency situations. *Wilmington General Hospital v. Manlove* (Del. 1961), 174 Atl. 2d 135; *Le Juene Road Hospital, Inc. v. Watson* (Fla. App. 1965), 171 So. 2d 202; *Stanturf v. Sipes* (Mo. 1969), 447 S. W. 2d 558, 35 A. L. R. 3d 834; *Barcia v. Society of New York Hospital* (1963), 39 Misc. 2d 526, 241 N. Y. Supp. 2d 373. The Georgia court has imposed such a duty only upon public hospitals. *Williams v. Hospital Authority of Hall County* (1969), 119 Ga. App. 626, 168 S. E. 2d 336. Behind this rule is reasoning that if a hospital holds itself out as providing emergency treatment, its refusal to administer aid might result in a worsening of the injured person's condition due to lost time, and such action is akin to liability based on negligent termination of gratuitous services. *See* Restatement, *Torts* 2d, p. 139, sec. 324 (b) (1965).

But the courts holding a hospital liable for failure to give emergency treatment are still in the minority. *See* Powers, *Hospital Emergency Service and the Open Door*, 66 Mich. L. Rev. (1968), 1455; Recent Developments, 62 Columbia L. Rev. (1962), 730; Case Comment, 64 W. Va. L. Rev. (1962), 234; Annot. (1971), *Liability of*

*Hospital for Refusal to Admit or Treat Patient*, 35 A. L. R. 3d 841. We think, however, that today, without our society's emphasis upon a concern for the health of its citizens, private hospitals with emergency wards and facilities for emergency services have a duty to admit those in need of aid. It would shock the public conscience if a person in need of medical emergency aid would be turned down at the door of a hospital having emergency service because that person could not at that moment assure payment for the service. The public expects such service; the public support of a hospital and the governmental grants in aid to hospitals to increase their facilities all substantiate the fact that hospitals with emergency service cannot refuse it to the needy. Abolishment of the charitable hospital immunity rule constituted a judicial expression of this desire to obtain responsible medical treatment for all patients. *See Kojis v. Doctors Hospital* (1961), 12 Wis. 2d 367, 107 N. W. 2d 131, 107 N. W. 2d 292.

It is quite true in *Carthaus v. Ozaukee County* (1941), 236 Wis. 438, 295 N. W. 678, and in similar cases the court took the then traditional view and philosophical approach that public medical assistance was somewhat demeaning and its acceptance was in some cases a forfeiture of self-respect. But such a view did not appreciate that the health of individual citizens is a legitimate public concern. Today's cost of medical and hospital care has reached such heights that the means of payment necessitate such social devices as medicare, medical and hospital insurance, and public relief such as sec. 49.02 (5), Stats.

We think the hospital is entitled to recover from Winnebago county for the services rendered Miss Wilkinson because she is a person entitled to relief under ch. 49, Stats., whether she applies for it or not. It is quite true the trial court did not make a specific finding

of her eligibility based on dependency, but on the facts presented at trial as a matter of law no other conclusion can be drawn except that Miss Wilkinson is a dependent person within the meaning of sec. 49.01 (4), Stats., and a person entitled to relief under sub. (5) of sec. 49.02. Since the hospital has reduced its claim to judgment, we think that upon payment by Winnebago county of the claim of the hospital, the hospital should assign to the county its judgment against Miss Wilkinson.

*By the Court.*—Judgment reversed, and the cause remanded for further proceedings in accordance with this opinion.

* Motion for rehearing denied, without costs, on June 29; 1973.