ST. MICHAEL HOSPITAL OF FRANCISCAN SISTERS,
Milwaukee, Plaintiff-Respondent,

V.

COUNTY OF MILWAUKEE, Wisconsin,
Defendant-Appellant†

Court of Appeals

*No. 79–1358. Submitted on briefs May 6, 1980.—
Decided June 9, 1980.*
(Also reported in 295 NW2d 189.)

† Petition for review denied.

For the appellant the cause was submitted on the briefs of *Gerard S. Paradowski,* acting corporation counsel, with whom on the briefs was *Dean M. Horwitz,* assistant corporation counsel.

For the respondent, the cause was submitted on the brief of *Lorna J. Granger* of *Purtell, Purcell, Wilmot & Burroughs, S.C.,* of Milwaukee,

Before Decker, C.J., Moser, P.J., and Cannon, J.

CANNON, J. This is an appeal from a judgment awarding plaintiff-respondent St. Michael Hospital (hospital) $5,790.45 plus costs in an action to recover costs of care rendered by the hospital pursuant to sec. 49.02 (5), Stats.[1] On April 11, 1977, Pamela Vales (Vales)

[1] Section 49.02:

(5) The municipality or county shall be liable for the hospitalization of and care rendered by a physician and surgeon to a person entitled to relief under this chapter, without previously authoriz-

was admitted to the hospital for treatment of a drug overdose, an acute emergency for which she required immediate medical attention. She received psychiatric care for her emotional problems, and was discharged on May 18, 1977. At the time of her hospitalization, Vales was unable to pay for her care, nor was she receiving any medical assistance benefits. The hospital sought compensation from Milwaukee county (county) pursuant to sec. 49.02(5), which provides for payment for emergency care rendered to persons entitled to relief under ch. 49. In accordance with sec. 49.02(5), the hospital notified the county within seven days of Vales' admission to the hospital. Forms promulgated by the county for use in such situations were utilized, and all procedural requirements were complied with. The county disallowed the claim, and an action was commenced by the hospital on June 5, 1978. In its answer, the county denied that the patient was entitled to relief under ch. 49, and alleged that the charges were unreasonable and that the patient had other means to pay the charges, *i.e.*, Title XIX of the Social Security Act, and the Federal Hill-Burton Act. The trial court held the county liable for the charges under sec. 49.02(5). The county appeals.

ing the same, when, in the reasonable opinion of a physician, immediate and indispensable care or hospitalization is required, and prior authorization therefor cannot be obtained without delay likely to injure the patient. There shall be no liability for such care or hospitalization beyond what is reasonably required by the circumstances of the case, and liability shall not attach unless, within 7 days after furnishing the first care or hospitalization of the patient, written notices by the attending physician and by the hospital be mailed or delivered to the official or agency designated in accordance with this section, reciting the name and address of the patient, so far as known, and the nature of the illness or injury, and the probable duration of necessary treatment and hospitalization. Any municipality giving care or hospitalization as provided in this section to a person who has settlement in some other municipality may recover from such other municipality as provided in s. 49.11.

The county's first argument is that sec. 49.02(5), Stats., is inapplicable because Vales was not a "dependent" person within the meaning of sec. 49.01(4).[2] Section 49.01(4) defines a dependent person as one "without the present available money or income or property or credit, or other means by which the same can be presently obtained, sufficient to provide the necessary commodities and services specified in subsection (1)." Section 49.01(1) includes medicine, medical treatment including hospital care and nursing under the definition of "necessary services."[3] The county argues that Vales was not a dependent person because the provisions of 42 U.S.C. §291c(e), the Federal Hill-Burton Act, provided Vales with a means by which she could pay her hospital bill. We disagree.

Hill-Burton funds are made available to hospitals to stimulate expansion and improvement of hospitals by means of a program of grants and loans from the fed-

[2] Section 49.01:

(4) "Dependent person" or "dependent" means a person without the present available money or income or property or credit, or other means by which the same can be presently obtained, sufficient to provide the necessary commodities and services specified in subsection (1).

[3] Section 49.01:

(1) "Relief" means such services, commodities or money as are reasonable and necessary under the circumstances to provide food, housing, clothing, fuel, light, water, medicine, medical, dental, and surgical treatment (including hospital care), optometrical services, nursing, transportation, and funeral expenses, and include wages for work relief. The food furnished shall be of a kind and quantity sufficient to provide a nourishing diet. The housing provided shall be adequate for health and decency. Where there are children of school age the relief furnished shall include necessities for which no other provision is made by law. The relief furnished, whether by money or otherwise, shall be at such times and in such amounts, as will in the discretion of the relief official or agency meet the needs of the recipient and protect the public.

eral government. Hospitals receiving such funds are thereafter required to make a reasonable volume of services available to persons unable to pay for them. The legislation does not delineate, however, the number of patients for which a hospital must provide services, nor does it establish that Hill-Burton funds are to be utilized to the exclusion of other federal or state medical benefits. Rather, 42 C.F.R. 53.111(f)(2)(i) indicates that a hospital may not include within its computation of uncompensated services under the Hill-Burton Act "[a]ny amount which the applicant has received, or is entitled to receive, from a third party insurer *or under a governmental program; . . . .*" [Emphasis supplied.] Thus, a hospital must look to payment by other governmental programs for uncompensated care obligations before looking to Hill-Burton funds. For this reason, evidence of a hospital's obligations under the Hill-Burton Act is not relevant here, and the county cannot raise this subsection as a special defense in the collection action by the hospital. *See also Falmouth Hospital v. Lopes, et al.,* 382 N.E.2d 1042 (Mass. 1978); *Valley Credit Service Inc. v. Mair,* 35 Or. App. 637, 582 P.2d 47 (1978); *Yale-New Haven Hospital v. Matthews, et al.,* 32 Conn. Supp. 539, 343 A.2d 661 (1974), *cert. denied,* 423 U.S. 1024 (1975).

The county's second argument is that Vales would have been eligible under Title XIX of the Social Security Act, and that this eligibility constituted "other means" by which she could have paid her hospital bill. We must again disagree.

Section 49.01(4), Stats., clearly states that one is dependent when without "present available . . . other means" by which services can be obtained. The statute refers to *present* available money or *presently* available other means. The language of the statute thus clearly

refers to an individual's present economic situation or present dependent status. *State ex rel. Tiner, et al. v. Milwaukee County, et al.*, 81 Wis.2d 277, 260 N.W.2d 393 (1977), dealt with a factual situation similar to the one before us. The issue in *Tiner* was whether an AFDC (Aid to Families with Dependent Children) recipient who could not pay for fuel qualified under ch. 49 for general relief. The court noted that the determination of whether an applicant for relief is "dependent" or has "other means" to pay for services is determined by statute, and reaffirmed the rule that the establishment of any preconditions to the receipt of general relief was invalid. The court indicated that eligibility must depend on a factual determination of an applicant's circumstances at the time of application. In *State ex rel. Arteaga v. Silverman*, 56 Wis.2d 110, 201 N.W.2d 538 (1972), the court similarly refused to allow welfare officials to rely on an applicant's past conduct to determine present dependent status.

The Wisconsin Supreme Court, in *Mercy Medical Center of Oshkosh, Inc. v. Winnebago County*, 58 Wis.2d 260, 206 N.W.2d 198 (1973), made it clear that a hospital's right to recovery under sec. 49.02(5), Stats., cannot also be based upon a patient's subsequent or future action in applying for relief. *Mercy Medical Center, supra,* involved a fact situation wherein a patient refused to apply for general relief under ch. 49 after receiving emergency medical care. The county refused to pay for the care based on the patient's lack of cooperation. The Wisconsin Supreme Court disagreed with the position taken by the county, and held that the acts of the patient were irrelevant to the county's obligation under sec. 49.02(5), Stats.

The only express condition precedent to the county's liability is a notice to be given to it within seven days after furnishing hospitalization. The hospital's right to

recover under this section should not be conditioned upon the recipient's subsequent action or inaction or even refusal to apply under ch. 49 for general relief which she does not want. *Mercy Medical Center, supra* at 266, 206 N.W.2d 200.

Applying the reasoning of the above-cited cases to the facts before us, we hold that while Vales may or may not be eligible for Title XIX benefits, the county's obligation to pay for her medical care is not conditioned on such eligibility. Vales was not receiving Title XIX benefits at the time of her hospitalization, and her potential eligibility for such benefits at some time in the future does not fall within the clear intent of the statutory scheme. Thus, we do not find the possibility of Title XIX benefits constitutes "other means" of payment. There was no error in the trial court's refusal to admit evidence with respect to Vales' failure to seek Title XIX benefits.

The county's next argument relates to the admissibility of Vales' "Application for Medical and/or Hospital Care as General Relief" (Form 212) and her "Social Summary Form." Both forms were drafted by Milwaukee county, and disseminated to hospitals for use in documenting a patient's financial and personal data prior to filing a claim under sec. 49.02(5), Stats. In the case before us, Form 212 was filled in by an employee of the hospital and Vales then completed the affidavit on the bottom of the form, indicating that the statements in the application were correct.

The county argues that the completed forms constituted inadmissible hearsay evidence because Vales was available as a witness at trial but did not testify. The facts show that Vales was served with subpoenas on April 4, 1979, and on April 30, 1979, demanding that she appear for a deposition and trial. She failed to appear both times. We are of the opinion that under these cir-

cumstances, Vales was "unavailable" under sec. 908.04
(1) (e), Stats., and that the evidence was therefore ad-
missible under sec. 908.045(6). Section 908.045(6) al-
lows the admission of evidence where the declarant is
unavailable and the evidence has circumstantial guaran-
tees of trustworthiness comparable to other types of ad-
missible hearsay. Hearsay evidence is generally excluded
as untrustworthy because it lacks the traditional guaran-
tees of oath, confrontation and cross-examination to
establish the credibility of the out-of-court declarant.
The county claims that for this reason, Vales should have
been present to testify. Form 212, however, was ac-
companied by a sworn affidavit, Vales' signature being
witnessed by a notary public. The hospital employee who
took the information and completed Form 212 also testi-
fied regarding the procedures followed. Moreover, the
county made no effort to prove the untruthfulness of
Form 212 or the Social Summary or to challenge the un-
trustworthiness of Vales herself. The county had an op-
portunity to question Vales while she was in the hospital
inasmuch as notice of the claim was received within
seven days of Vales' admission, and she was a patient for
more than one month. Moreover, the county could have
attempted to contact Vales at any time prior to trial.

We will not allow the county to avoid liability under
sec. 49.02(5), Stats., by arguing that its own forms are
insufficient to support a claim under the above statute
without the accompanying testimony of the patient by
whom it was completed. To do so would encourage the
county to ignore the seven-day-notice requirement and
then prevail upon the disallowance of a claim because the
patient is not available at trial a year or two later.

We also hold that Form 212 and the Social Summary
were admissible evidence under sec. 908.03(6), Stats.
This section exempts admission of records made in the
course of regularly conducted activities from the applica-

tion of the hearsay rule. We note that the testimony of hospital employee David Anker indicated that one of his responsibilities was to complete Form 212 for patients who appeared unable to pay. The hospital regularly kept such records in the course of its daily operations, and the records were produced at trial by their custodian. Thus Form 212 and the Social Summary were also admissible under this exception to the hearsay rule.

The county's last argument is that the evidence regarding the reasonableness of the charges was inadequate, and that the hospital did not prove that Vales actually received the services for which she was billed. We must reject both arguments. John Dellemann, Director of Patient Accounts at the hospital testified regarding the procedures by which a physician orders certain treatments, and the manner in which a patient is billed for services rendered. He explained the billing procedure, and the means by which each patient's account is credited. He also testified that the charges on the bill were reasonable and customary at the time of Vales' hospitalization. Finally, he testified that the charges had been received and found reasonable by the state Rate Review Committee. Such evidence was sufficient to establish the legitimacy of the charges. The county's arguments are far too speculative and lacking in support for this court to conclude that the evidence of the hospital charges should be excluded as unreasonable.

*By the Court.*—Judgment affirmed.