DAVID H. RAIHLE, Corporation Counsel Chippewa County
You have submitted questions relating to the relative rights and obligations of hospitals, counties, and individual patients under the Federal Hill-Burton Act and the state emergency medical relief program under sec. 49.02 (5), Stats.
QUESTIONS
Your questions are:
 1. May a hospital that has received funds under the Hill-Burton Act charge the cost of emergency medical care for a dependent person to a county pursuant to sec. 49.02 (5), Stats., or must the hospital absorb the cost in satisfaction of assurances made under the Hill-Burton Act?
 2. In answering the foregoing question, does it make any difference whether the person receiving the emergency medical care is currently receiving general relief or is not currently receiving general relief but is rendered unable to pay for the medical care by the accident or affliction which prompts it?
 3. Does a person receiving emergency medical care have a personal right to be accorded medical treatment as a beneficiary of a hospital's Hill-Burton assurance to provide a reasonable volume of services to persons unable to pay therefor?
 SUMMARY ANSWERS
 1. A hospital that has received a grant under the Hill-Burton Act is obligated to honor the assurances it made as a condition to receiving the grant, but the nature and extent of a hospital's Hill-Burton obligation does not foreclose the hospital from submitting claims to the county under sec. 49.04 (5), Stats., nor does it absolve the county of its statutory liability to pay such claims. *Page 26 
 2. The answer is the same whether the person receiving emergency medical care is already authorized to receive general relief or becomes eligible to receive general relief due to the accident or affliction which prompts the care. Where a "dependent person" is given emergency medical care, the county is liable therefor even though the person was not previously authorized to receive general relief.
 3. Although persons have a conditional right to compel a hospital to honor its Hill-Burton assurances, an individual does not have a personal right to be a beneficiary of such assurances.
 DISCUSSION
The purpose of the Hill-Burton Act is to assist each state in developing an adequate statewide health care system and to stimulate the development of health care facilities and services.42 U.S.C. sec. 291. Stimulation takes the form of grants, loans, and loan guarantees for the construction or modernization of hospitals or public health centers. 42 U.S.C. secs. 291a, 291j,291j-1.
As a condition to receiving a grant, a hospital has to give certain assurances including an assurance that "there will be made available in the facility or portion thereof to be constructed or modernized a reasonable volume of services to persons unable to pay therefor." 42 U.S.C. sec. 291c(e). The exchange of Hill-Burton benefits for assurances creates a contractual relationship. Corum v. Beth Israel Medical Center,359 F. Supp. 909, 912 (S.D.N.Y. 1973). The relationship between the federal government and a hospital under the Hill-Burton Act exists independent of state law.
Wisconsin's emergency medical relief program was created by ch. 585, Laws of 1945. The purpose of the program was to ensure that hospitals and doctors would provide prompt emergency care to those in need without regard for immediate payment or security therefor. See Mercy Medical Center v. Winnebago County,58 Wis.2d 260, 266, 206 N.W.2d 198 (1973).
As a general matter, if a hospital provides emergency medical care to a dependent person, as defined in sec. 49.01 (4), Stats., the hospital is entitled to reimbursement for the care pursuant to sec. 49.02 (5), *Page 27 
Stats., which creates a relationship between a county and a hospital independent of federal law. It reads as follows:
 The municipality or county shall be liable for the hospitalization of and care rendered by a physician and surgeon to a person entitled to relief under this chapter, without previously authorizing the same, when, in the reasonable opinion of a physician, immediate and indispensable care or hospitalization is required, and prior authorization therefor cannot be obtained without delay likely to injure the patient. There shall be no liability for such care or hospitalization beyond what is reasonably required by the circumstances of the case, and liability shall not attach unless, within 7 days after furnishing the first care or hospitalization of the patient, written notices by the attending physician and by the hospital be mailed or delivered to the official or agency designated in accordance with this section, reciting the name and address of the patient, so far as known, and the nature of the illness or injury, and the probable duration of necessary treatment and hospitalization. Any municipality giving care or hospitalization as provided in this section to a person who has settlement in some other municipality may recover from such other municipality as provided in s. 49.11.
The duty of the county to pay proper claims for relief under sec. 49.02 (5), Stats., is clear from the language of the statute and two supreme court decisions. In Mercy Medical Center, the court held that the county is liable for emergency hospital relief if the hospital satisfies the requirements of sec. 49.02
(5), Stats., and the patient appears to be entitled to relief, even if the patient refuses to apply for relief subsequent to treatment. In Clintonville Community Hosp. v. Clintonville,87 Wis.2d 635, 275 N.W.2d 655 (1979), the court held that a city is liable for emergency medical treatment if the hospital meets its burden of proving that the prerequisites for liability under sec.49.02 (5), Stats., are satisfied. In rejecting the city's principal contention, the court declined to augment the statute by requiring hospitals to conduct investigations into a patient's entitlement to relief. The court held that since such a requirement is not expressed in the statute, it cannot be imposed. 87 Wis.2d at 643.
These two supreme court decisions stand for two propositions pertinent here. First, a county is liable for emergency medical care if the *Page 28 
hospital proves that the expressed conditions of sec. 49.02 (5), Stats., are met. Second, a county may not impose conditions in addition to those expressed in the statute. Since sec. 49.02 (5), Stats., does not expressly condition a hospital's claims or a county's liability on satisfaction of assurances made by the hospital under the Hill-Burton Act, it follows that such a condition may not be imposed or relied upon by a county in its administration of the emergency medical relief program.
For a recent federal district court decision that is supportive of this conclusion, see Gilmore v. Custer, Civil No. L72-2 (N.D. Ind., Feb. 29, 1980), wherein the court held that it was improper for Indiana public welfare agencies to deny medical relief payments on the basis that free care was available by virtue of the Hill-Burton Act.
The question remains whether a hospital is foreclosed from submitting claims for emergency medical relief because of its Hill-Burton assurance to provide "a reasonable volume of services to persons unable to pay therefor." The answer is that federal law authorizes hospitals to submit such claims.
42 U.S.C. sec. 291c(intro.), (e) reads as follows:
General regulations
 The Surgeon General, with the approval of the Federal Hospital Council and the Secretary of Health, Education, and Welfare, shall by general regulations prescribe —
 e) that the State plan shall provide for adequate hospitals, and other facilities for which aid under this part is available, for all persons residing in the State, and adequate hospitals (and such other facilities) to furnish needed services for persons unable to pay therefor. Such regulations may also require that before approval of an application for a project is recommended by a State agency to the Surgeon General for approval under this part, assurance shall be received by the State from the applicant that (1) the facility or portion thereof to be constructed or modernized will be made available to all persons residing in the territorial area of the applicant; and (2) there *Page 29 will be available in the facility or portion thereof to be constructed or modernized a reasonable volume of services to persons unable to pay therefor, but an exception shall be made if such a requirement is not feasible from a financial viewpoint.
(Emphasis added.)
Under this authority, federal regulations were created in42 C.F.R. sec. 53.111, et seq. New superseding regulations were published on May 18, 1979, and are contained in 42 C.F.R. Part 124.44 Fed. Reg. 29372 (1979). This opinion will focus on the new regulations, although the conclusions would be the same under the old regulations.
To comply with their assurance to provide a reasonable volume of services to persons unable to pay for the services, a facility is required to provide uncompensated services in an amount that is not less than the lesser of (1) three percent of its operating costs or (2) ten percent of all federal assistance provided to the facility. 42 C.F.R. sec. 124.503 (a). The standard is an objective one. A facility is not necessarily required to provide free care to all persons who seek it.
In computing uncompensated services, a facility may not include:
 (a) Any amount that the facility has received, or is entitled to receive, from a third party insurer or under a governmental program, except where the person to whom the facility provides services refused to take reasonable actions necessary to obtain the entitlement.
 (b) Any amount in excess of the payment that the facility has received, or is entitled to receive, from a third party insurer or under a governmental program where the facility has agreed or is otherwise required to accept this payment as payment in full for the services;
. . . .
 (d) Any amount for which reimbursement would be available under a governmental program (such as medicare or medicaid) *Page 30 
in which the facility, although eligible to do so, and required by sec. 124.603 (c) (1) to do so, does not participate.
42 C.F.R. sec. 124.509.[1]
The regulation clearly contemplates that Hill-Burton facilities may seek reimbursement for services rendered to the poor. In fact, a facility is disadvantaged if it does not seek reimbursement which is available to it, because reimbursable care cannot be counted as "uncompensated services" even if reimbursement is not sought. The emergency relief provisions in sec. 49.02 (5), Stats., constitute the sort of "governmental program" referred to in these federal regulations.
Along with the assurance to provide free care, Hill-Burton facilities were also required to make an assurance regarding community service. 42 U.S.C. sec. 291c(e). In satisfaction of that companion assurance,
 [t]he facility shall make arrangements, if eligible to do so, for reimbursement for services with:
 (i) Those principal State and local governmental third-party payors that provide reimbursement for services that is not less than the actual costs, as determined in accordance with accepted cost accounting principles; and
 (ii) Federal governmental third-party programs, such as medicare and medicaid.
 (2) The facility shall take any necessary steps to insure that admission to and services of the facility are available to beneficiaries of the governmental programs specified in paragraph (c)(1) of this section without discrimination or preference because they are beneficiaries of those programs.
42 C.F.R. sec. 124.603 (c)(1).[2] *Page 31 
More than authorizing, the foregoing federal regulations require Hill-Burton facilities to seek reimbursement for services under programs such as the emergency medical relief program under sec. 49.02 (5), Stats.
To summarize at this point, the assurance of a hospital to provide "a reasonable volume of services to persons unable to pay therefor" does not preclude the hospital from submitting claims for emergency medical relief under sec. 49.02 (5), Stats., and a county is bound to honor such claims if the express conditions of that statute are satisfied.
This conclusion stands whether the person receiving the care is or is not receiving general relief at the time the emergency treatment is provided. The test under sec. 49.02 (5), Stats., is whether the person is "entitled to relief" at the time even if there is not prior authorization. Mercy Medical Center,58 Wis.2d at 266-67, held that if it may be ascertained that the person was a "dependent person" at the time emergency services were rendered, the county is liable for the resultant claim even if the patient fails to subsequently apply for relief. Thus, even in this latter situation, the hospital would have a reimbursable claim which by 42 C.F.R sec. 124.603 (c)(1), it is bound to pursue and which by 42 C.F.R. sec. 124.509, it is precluded from reporting as an uncompensated service rendered in satisfaction of its Hill-Burton assurance.
Turning now to your final question: "Does a person receiving emergency medical care have a personal right to be accorded medical treatment as a beneficiary of a hospital's Hill-Burton assurance to provide a reasonable volume of services to persons unable to pay therefor?"
Hill-Burton facilities are obligated to provide a certain dollar amount of free care. 42 C.F.R. sec. 124.503 (a). Hospitals are not necessarily required to provide free care to all indigents who come to the hospital. Cook v. Ochsner FoundationHospital, 559 F.2d 968, 972 (5th Cir. 1977). Hospitals have some discretion to determine which patients or categories of patients are to be treated as beneficiaries of their Hill-Burton assurance. Gordon v. Forsyth County Hospital Authority, Inc.,544 F.2d 748 (4th Cir. 1976). *Page 32 
Primary jurisdiction to enforce Hill-Burton assurances resides with the Federal Department of Health and Human Services under42 U.S.C. sec. 300s-6 which establishes the exclusive mechanism for enforcing Hill-Burton assurances. Newsom v. VanderbiltUniversity, 453 F. Supp. 401, 405, 408 (M.D. Tenn. 1978); Lugo v.Simon, 453 F. Supp. 677, 684-85 (N.D. Ohio 1978). Under that provision, individuals have a right to bring actions to compel compliance with Hill-Burton assurances only if they first file a complaint with the federal government and the complaint is dismissed or not acted upon.
I am aware of no basis for concluding that an individual recipient has a personal right, enforceable against a hospital, to demand that he or she be considered an uncompensated account under the Hill-Burton Act rather than a reimbursable account under state law. Several cases suggest that there is no such personal right. See Gordon v. Forsyth County Hospital Authority,Inc., 409 F. Supp. at 721, 722 (M.D.N.C. 1976), affirmed in part,vacated in part and remanded, 544 F.2d 748 (4th Cir. 1976); Lugo,453 F. Supp. at 684; Yale-New Haven Hospital v. Matthews,32 Conn. Supp. 539, 343 A.2d 661 (1974), cert. denied, 341 A.2d 432
(1975), cert. denied, 423 U.S. 1024 (1975) (hospital's failure to satisfy Hill-Burton assurance may not be raised by an individual as a defense against hospital's collection action).
The conclusions in this opinion are consistent with and supported by the holdings in St. Michael Hospital v. County ofMilwaukee, 98 Wis.2d 1, 295 N.W.2d 189 (Ct.App. 1980), petition for review denied September 25, 1980.
BCL:RWL
[1] The old regulations contain similar provisions at42 C.F.R. sec. 53.111 (f) (2).
[2] The old regulations contain similar provisions at42 C.F.R. sec. 53.113 (d)(2).