LUTHER HOSPITAL, a Wisconsin corporation, and
Midelfort Clinic, Ltd., Plaintiffs-Appellants,

v.

EAU CLAIRE COUNTY, Wisconsin, a municipal corporation,
Defendant-Respondent.†

Court of Appeals

*No. 83–028. Submitted on briefs June 28, 1983.—*
*Decided September 6, 1983.*
(Also reported in 339 N.W.2d 798.)

† Petition to review denied.

For the appellant the cause was submitted on the brief of *John D. Kaiser* and *Kaiser, Ltd.,* of Eau Claire.

For the respondent the cause was submitted on the brief of *Carl T. Bahnson,* assistant corporation counsel, of Eau Claire.

Before Foley, P.J., Dean and Cane, JJ.

CANE, J.   Luther Hospital and Midelfort Clinic, Ltd., appeal from a judgment dismissing their complaint for payment by Eau Claire County (county) of the emergency medical service costs for Harold E. Gorman. The trial court concluded that Gorman was not a dependent as defined by sec. 49.01(4), Stats., and therefore the county was not liable for the cost of his care. Because we conclude that Gorman's right to apply for a veteran's emergency relief grant did not constitute "other means" by which he could "presently obtain" money to provide

emergency medical services for himself, we reverse the judgment and remand this matter to the trial court with directions.

Gorman was admitted to Luther Hospital on May 24, 1981, with chest pains diagnosed as a possible heart attack. He was treated by a physician from Midelfort Clinic and released on May 27. On May 26, a Notice of Emergency Hospitalization and/or Inpatient Treatment signed by the attending physician was sent to the Eau Claire County Department of Human Services. The notice was intended to satisfy the procedural requisites to county liability for the cost of Gorman's care under sec. 49.02(5), Stats.,[1] and indicated that Gorman was a veteran of United States military service.

The Eau Claire County Veteran's Service office was also notified of the emergency hospitalization. This office in turn notified the Wisconsin Department of

---

[1] Section 49.02(5), Stats., provides:

The municipality or county shall be liable for the hospitalization of and care rendered by a physician and surgeon to a person entitled to relief under this chapter, without previously authorizing the same, when, in the reasonable opinion of a physician, immediate and indispensable care or hospitalization is required, and prior authorization therefor cannot be obtained without delay likely to injure the patient. There shall be no liability for such care or hospitalization beyond what is reasonably required by the circumstances of the case, and liability shall not attach unless, within 7 days after furnishing the first care or hospitalization of the patient, written notices by the attending physician and by the hospital be mailed or delivered to the official or agency designated in accordance with this section, reciting the name and address of the patient, so far as known, and the nature of the illness or injury, and the probable duration of necessary treatment and hospitalization. Any municipality giving care or hospitalization as provided in this section to a person who has settlement in some other municipality may recover from such other municipality as provided in s. 49.11.

The procedural requisites to county liability are not at issue on this appeal.

Veteran's Affairs (department), in an attempt to secure an emergency grant for health care aid pursuant to Wis Admin Code § VA 2.01 (1979).[2] Such aid was not

[2] The pertinent parts of Wis. Admin. Code § VA 2.01 (1979) remain unchanged in Wis. Admin. Code § VA 2.01 (1983). They provide:

(1) DEFINITIONS. In this section the following terms shall have the designated meanings:

(a) "Health care aid" means payment by the department for essential medical services, including without limitation by reason of enumeration physician services, hospital charges, eye glasses, prostheses, leasing or purchase of medical appliances and equipment and dental care.

. . . .

(2) OBJECTIVE. The department may grant to any veteran or eligible dependent such temporary emergency aid from the veterans trust fund as may be necessary to prevent want or distress. Want and distress may be deemed to exist only when an applicant for temporary emergency aid has insufficient resources to cover the cost of health care or subsistence required by the applicant and the applicant's dependents, is ineligible for sufficient aid under federal or state assistance programs, except for direct general relief, and when the applicant has insufficient income to enable the applicant to repay a loan, the proceeds of which could be used for the purpose of providing necessary health care.

(3) SCOPE OF EMERGENCY AID. Emergency aid to prevent want or distress may be authorized to provide health care aid and subsistence aid.

. . . .

(6) PRIOR AUTHORIZATION. Except in the case of medical emergency, prior authorization must be obtained for health care aid. In the case of medical emergency, health care aid may be granted for medical and dental care received within the 10 day period prior to receipt by the department of a valid notice that treatment has been or is being received for an emergency condition.

(7) PAYMENT OF MEDICAL BILLS. Where payment for medical or hospital bills has been approved by the department, final payment will be made only when itemized medical or hospital statements are submitted in duplicate.

. . . .

(9) EVIDENCE REQUIRED. Temporary emergency aid will be granted only if the department has sufficient evidence in its

obtained, however, because Gorman did not submit the necessary application forms for certification of his eligibility.

Section 49.02 (5) makes local governments liable for the expense of hospitalization and medical care of persons entitled to general relief under ch. 49, Stats. To be entitled to relief under ch. 49, a person must meet certain criteria, the only one at issue on this appeal being whether Gorman was a dependent. A dependent is defined in sec. 49.01 (4), Stats., as:

[A] person without the present available money or income or property or credit, or other means by which the same can be presently obtained, sufficient to provide the necessary commodities and services [including medical, surgical, and hospital care] . . . .

The trial court concluded, as a matter of law, that Gorman's right to apply for a veteran's emergency grant for health care aid constituted "other means by which the same can be presently obtained," making him nondependent and not entitled to relief under ch. 49, thus relieving the county of liability for the cost of his care. The interpretion of a statute is a question of law to be independently decided by this court without deference to the trial court's conclusion. *Nelson v. Union National Bank,* 111 Wis. 2d 313, 315, 330 N.W.2d 225, 226–27 (Ct. App. 1983).

As a veteran, Gorman could have applied to the Wisconsin Department of Veteran's Affairs for an emer-

---

files upon which to base such aid. When deemed necessary, direct investigation may be made prior to acting upon an application. . . . .

(11) DUPLICATION OF ASSISTANCE. When assistance applied for under this section is available from other agencies, excepting only general relief, emergency aid may not be approved except as a supplement to such other assistance, but emergency aid may not be used to duplicate assistance provided by other agencies including general relief.

gency grant for health care aid to cover the expense of his hospitalization under Wis. Admin. Code § VA 2.01 (1979). The department requires that sufficient evidence be submitted, and in some cases investigated, before an application for an emergency grant will be acted upon. Wis. Admin. Code § VA 2.01(9) (1983). The required evidence should include information demonstrating that the veteran "has insufficient resources to cover the cost of health care . . . and . . . insufficient income to enable the [veteran] . . . to repay a loan, the proceeds of which could be used for the purpose of providing necessary health care." Wis. Admin. Code §§ VA 2.01 (2), (3) and (9) (1983). If the veteran is eligible and follows the proper procedure, a grant may be authorized for emergency medical care already rendered if the department receives prompt notice of the treatment. *See* Wis. Admin. Code § VA 2.01(6) (1983). The department apparently received notice of the treatment, but Gorman never applied for a grant.

The trial court found "that Harold E. Gorman at the time he received the medical service was eligible for reimbursement of those expenses through his veterans rights and that he failed to date to apply for those rights." In order to receive such reimbursement, however, Gorman must first apply to the department, which must then make its own determination of his eligibility. A veteran's grant would thus require action by Gorman subsequent to his hospitalization. A hospital's right to recover the cost of emergency medical care under sec. 49.02(5) "should not be conditioned upon the recipient's subsequent action or inaction." *Mercy Medical Center of Oshkosh, Inc. v. Winnebago County,* 58 Wis. 2d 260, 266, 206 N.W.2d 198, 200 (1973); *St. Michael Hospital v. Milwaukee County,* 98 Wis. 2d 1, 6–7, 295 N.W.2d 189, 193 (Ct. App. 1980). A grant would also be dependent

upon the department's future determination of Gorman's eligibility. This potential future eligibility does not fall within the clear intent of the statutory scheme of ch. 49 to provide needed relief for persons without present available money or "other means" by which to obtain it. *See St. Michael Hospital,* 98 Wis. 2d at 6, 295 N.W.2d at 192–93.

The trial court incorrectly concluded that this case is not controlled by *Mercy Medical Center* and *St. Michael Hospital.* The supreme court, in *Mercy Medical Center,* 58 Wis. 2d at 268–69, 206 N.W.2d at 201, held that a recipient of emergency medical care was a dependent within the meaning of sec. 49.01(4) in spite of her refusal to subsequently apply for general relief. In refusing to condition the county's liability on subsequent action or inaction by the recipient, the court stated:

Availability of hospital emergency service may well be at stake. A hospital should not be put in the position of negotiating over payment for its services as a condition precedent to rendering emergency services. Our health-conscious society and the government's interest in extensive health care . . . demands that emergency service by doctors and hospitals shall be promptly rendered to those in need without regard for immediate payment or security therefor.

*Id.* at 266, 206 N.W.2d at 200. We find this concern applies as well to veterans whose eligibility for an emergency grant has not yet been determined.

*St. Michael Hospital* is more directly on point. Milwaukee County argued that a recipient of emergency medical care was eligible for medical relief under Title XIX of the Social Security Act and thus had available "other means" by which to pay her hospital bill. Since the recipient had not yet been determined eligible for Title XIX benefits and was not receiving such benefits at the time of her hospitalization, the court of appeals

held that she was without "present available . . . other means." *Id.* at 6, 205 N.W.2d at 192–93. At the time of his hospitalization, Gorman had not yet been determined eligible for a veteran's emergency grant nor was he receiving any money under the veteran's grant program. Although the department had been notified of the hospitalization, it could make no determination of eligibility unless it received an application. Gorman's status as a veteran, without more, was insufficient to entitle him to an emergency grant.

The fact that in *St. Michael Hospital* potential eligibility for Title XIX benefits was alleged to constitute "other means" does not distinguish this case. Eligibility for Title XIX medical assistance in Wisconsin requires a determination of eligibility based on income and resource limitations, as does a veteran's emergency grant. *Compare* sec. 49.47 (4), Stats., *with* Wis. Admin. Code §§ 2.01(2), (3) and (9) (1983). Also, medical assistance benefits, like veteran's emergency grants, can be provided for care rendered prior to application for such benefits. *See* sec. 49.47 (6), Stats. We see no basis on which to distinguish *St. Michael Hospital* from this case.

The county attempts to analogize Gorman's right to apply for a veteran's emergency grant to a property owner's right to mortgage property or to an insured's right to obtain coverage under an insurance policy. We agree that when "other means" are available, the possessor of such means may have an affirmative responsibility to use the available resource to obtain money to pay for medical care since it would be unavailable under sec. 49.02 (5). The "other means," however, must be present and available at the time the emergency medical care is rendered. In the case of a mortgage or insurance, the underlying property or policy possessed at the time service is rendered constitutes the "other means." All

that Gorman possessed at the time of his hospitalization was, as in *St. Michael Hospital,* a potential eligibility for other kinds of assistance. He had no property, policy, medical assistance card or authorization for a veteran's emergency grant, which might constitute "other means" at the time of his hospitalization.

Because we conclude that Gorman was a "dependent" as that term is defined in sec. 49.01 (4), we reverse and remand this matter for a trial on the merits of the appellants' complaint.

*By the Court.*—Judgment reversed and cause remanded with directions.