STATE EX REL. TINER, and others, Petitioners-Respondents, v. MILWAUKEE COUNTY, and others, Appellants.

*No. 76–524. Submitted on briefs November 2, 1977.—Decided December 13, 1977.*
(Also reported in 260 N.W.2d 393.)

For the appellants the cause was submitted on the briefs of *Robert P. Russell,* corporation counsel, and *James T. McClutchy,* principal assistant corporation counsel.

For petitioners-respondents the cause was submitted on the brief of *Anne L. DeLeo* and *Steven H. Steinglass,* Legal Action of Wisconsin, Inc., of Milwaukee.

DAY, J. The notice of appeal states that the appeal is taken from the writ of mandamus. However, appeals are taken from either judgments or orders, sec. 817.09 (2), Stats. 1975. While the document issuing the writ is denominated an "order," it is an order awarding a preemptory writ of mandamus and is therefore a final judgment, *State ex rel. Court of Honor of Illinois v. Geljohann,* 111 Wis. 377, 383, 87 N.W. 245 (1901).

We therefore treat the appeal as one from a judgment granting the petition for a writ of mandamus.

The petitioner-respondent, Emma Tiner, is a recipient of Aid to Families With Dependent Children (AFDC). In this action she represents herself and all other AFDC recipients in Milwaukee county who are being denied sufficient emergency general relief allowances to obtain fuel oil to heat their homes. She applied for the writ of mandamus to compel Milwaukee county and its relief-granting agencies and agents appellants, to provide her and members of her class with emergency general relief under the general relief provisions of ch. 49, Wis. Stats., in an amount sufficient under the circumstances of each case to maintain heat in their homes. In her petition she also seeks a declaratory judgment that the county's absolute policy of refusing to grant general relief to AFDC recipients for fuel violates the county statutory duty to furnish relief to all eligible dependent persons within the county.

On December 17, 1976, Mrs. Tiner petitioned for an alternative writ of mandamus which was issued the same day. On December 23, 1976, the county made its return. On January 6, 1977, following a hearing, the trial court granted the petition and issued a preemptory writ. The county appealed. This court granted the county's motion to advance and placed the case on its November 1977 calendar.

The facts have been stipulated to by the parties for purposes of this case. The petitioner is twenty-six years old, has two children, aged six months and five years, and lives in Milwaukee. Her only source of income is $357 a month in AFDC benefits. She receives $26 of this amount in the form of a voucher payable to Wisconsin Electric Power Company to pay her electric bills. She is eligible for Title XIX medical assistance. She receives $130 worth of food stamps for $94. Her fixed

monthly obligations include rent $90; electricity $26; gas and hot water $25; food stamp purchase $94; payments on retail sales contracts for household furnishings $44; and a minimum of 200 gallons of fuel oil $80. These fixed expenses total $359.

The record shows that on November 23, 1976, the petitioner purchased fuel oil for $41.40 with funds lent to her by her landlord. On December 1, 1976, she purchased 100 gallons of fuel oil for $39.90, payment of which was made by St. Vincent DePaul Society. She ran out of fuel oil on December 12, 1976, and as a result she and her two small children were forced to live in the rooms of their home where some heat was available from a gas stove and an electric hot plate until she received another fuel delivery paid for by private contributions on December 28, 1976. She claims she cannot obtain delivery of less than 100 gallons of fuel oil or credit from any Milwaukee fuel oil distributor but must make purchases of fuel oil on cash on delivery terms.

There is no claim by the county that the petitioner has made improper or improvident expenditures of her AFDC grants.

When she ran out of fuel oil, she was not able to obtain financial assistance from the county because no such assistance is available for emergencies such as this under the AFDC program and because the county has established a rule that AFDC recipients are not eligible for general relief under ch. 49, Wis. Stats.

At the time this suit was commenced, Milwaukee county officials estimated that between four and five thousand AFDC families heat their homes with oil. The Community Relations Social Development Commission (SDC) operates a federally-funded energy program which provides emergency fuel grants to low income persons, but under the terms of the program no emergency fuel grants may be made to AFDC recipients.

However, SDC put out an appeal for private donations and it was a response to such an appeal that provided the funds with which petitioner was given 100 gallons of fuel oil on December 28, 1976.

At the time this suit was commenced, SDC officials estimated there were at least 100 AFDC families in Milwaukee County that had run out of fuel oil and had been unable to heat their homes and that approximately 500 AFDC families in the county would be unable to maintain fuel in their homes over the course of the 1976–77 winter. Petitioner stated that the 100 gallons of oil furnished her on December 28th, based on her prior experience, would last only for approximately twelve days.

The question is: Is an AFDC recipient who cannot pay for fuel eligible for general assistance under ch. 49, Wis. Stats?

The AFDC program provides eligible families with a flat, fixed grant called the family allowance that varies with family size with place of residence.[1] Prior to 1975, AFDC recipients were entitled to receive a separate shelter, fuel and utility allowance, but in 1975 the legislature amended the statute to absorb these allowances into a fixed family allowance.[2] In 1975, the legislature created an AFDC program for assistance but confined the relief conferred to "cases of fire, flood or natural disaster."[3] The statutes governing AFDC contain no provision for emergency fuel relief.

None of the provisions for general relief prohibit welfare officials from awarding relief to AFDC recipients or recipients of other categorical aids. However, Milwaukee county established an absolute policy

[1] Sec. 49.19(11)(a), Stats. (1975).
[2] 1915 Laws, Ch. 39.
[3] Sec. 49.19(11)(b), Stats. (1975).

under which all AFDC recipients are ineligible for emergency fuel relief in the form of general assistance.

This is the second time that a circuit court in Milwaukee county has ruled that Milwaukee county is without authority under the general relief statutes to enforce a blanket rule making recipients of AFDC ineligible for general relief to obtain fuel regardless of the circumstances or emergency that may give rise to such need. The first case was *State of Wisconsin ex rel. Friend v. Arthur Silverman et al.*, Case No. 420–749, wherein the Honorable John A. Decker, Circuit Judge, found:

". . . that respondents' (Silverman and Milwaukee County) absolute policy of denying general relief fuel allowances under §49.01(1) Wis. Stats. (1971), to AFDC recipients to maintain fuel services violates the statutory duty under §49.02 Wis. Stats. (1971), to furnish relief to all eligible dependent persons within the County; and . . . that respondents' general relief fuel policy is not '. . . reasonable and necessary under the circumstances to provide . . . fuel' . . . within §49.01(1), Wis. Stats. (1971)."[4]

The county appealed the order of Judge Decker in the *Friend* case to the court but later stipulated to dismiss the appeal.

■

The dispensation of general relief is governed entirely by statute. *State ex rel. Sell v. Milwaukee County*, 65 Wis.2d 219, 233, 222 N.W.2d 592 (1974). Sec. 49.02(1), Stats. provides that "Every municipality shall furnish relief only to all eligible persons therein. . . ."[5] This

---

[4] Order for a writ of mandamus in *Friend, supra*, September 9, 1974, cited in alternative writ of mandamus in case at bar.

[5] Under sec. 49.51(2)(a), Stats., the Milwaukee county department of public welfare administers the relief program in Milwaukee county and thereby assumes the functions, duties and powers imposed on municipalities by sec. 49.02(1), Stats.

statute has been construed to impose on welfare officials conferring general relief a clear duty to support all dependent persons. *Meyer v. Town of Prairie du Chien,* 9 Wis. 233 (\*210), 234–235 (1859) ; *Mappes v. Board of Supervisors of Iowa County,* 47 Wis. 31, 32, 1 N.W. 359 (1879) ; *Ashland County v. Bayfield County,* 246 Wis. 315, 318, 16 N.W.2d 809 (1944).

"General relief" includes relief for fuel:

" 'Relief' means such services, commodities or money as are reasonable and necessary under the circumstances to provide food, housing, clothing, fuel, light, water, medicine, medical, dental, and surgical treatment (including hospital care), optometrical services, nursing, transportation, and funeral expenses, and include wages for work relief. The food furnished shall be of a kind and quantity sufficient to provide a nourishing diet. The housing provided shall be adequate for health and decency. Where there are children of school age the relief furnished shall include necessities for which no other provision is made by law. The relief furnished, whether by money or otherwise, shall be at such times and in such amounts, as will in the discretion of the relief official or agency meet the needs of the recipient and protect the public." Sec. 49.01(1), Stats.

Those eligible for such relief are those who meet the statutory definition of "dependent persons":

" 'Dependent person' or 'dependent' means a person without the present available money or income or property or credit, or other means by which the same can be presently obtained, sufficient to provide the necessary commodities and services specified in subsection (1)." Sec. 49.01(4), Stats.

The determination of whether an applicant for relief is a "dependent person" under sec. 49.01(4) is a question of fact that is not left to the discretion of local welfare officials. *Outagamie County v. Town of Brooklyn,* 18

Wis.2d 303, 311, 118 N.W.2d 201 (1962) ; *State ex rel. Sell v. Milwaukee County, supra,* at 224. If the applicant's need under sec. 49.01(1) exceeds the value of his presently available assets as defined by sec. 49.01(4), then the county must furnish relief, *State ex rel. Sell v. Milwaukee County, supra,* at 224, and a failure to provide relief in accordance with these statutes is a proper subject for a writ of mandamus. *State ex rel. Arteaga v. Silverman,* 56 Wis.2d 110, 115, 201 N.W.2d 538 (1972) ; *State ex rel. Sell v. Milwaukee County, supra,* at 233. On the other hand, the amount and kind of relief granted is within the discretion of welfare officials. *State ex rel. Sell v. Milwaukee County, supra,* at 224.

This court has consistently pointed out that eligibility for relief is entirely governed by statute and has declared invalid attempts at establishment of preconditions to receipt of such help that are not provided for by the legislature. In *State ex rel. Arteaga v. Silverman, supra,* Milwaukee county adopted a policy of denying general relief to any applicant who had voluntarily and without valid reason left a job. The court held that such a policy was inconsistent with the statutory definition of "dependent person," which relates dependence to a person's present economic situation. The court acknowledged that an applicant who has an available job has "other means" within the meaning of sec. 49.01(4), but held that when an applicant has no available job, welfare officials may not rely on his past conduct to determine his present dependent status and automatically deny him general relief.

Similarly, in *State ex rel. Sell v. Milwaukee County, supra,* the county required all applicants for permanent general relief to sell their automobiles, and all applicants for temporary general relief to turn over their title and license plates to the county. The court held that al-

though welfare officials could take into account the value of the applicant's auto in deciding how much relief to provide, they could not refuse to provide relief merely because the applicant owned a car. The court concluded that to do so was to impose an unauthorized prerequisite to the exercise by welfare officials of their statutory duty to determine dependence by a factual assessment of each applicant's need. *See also: Mercy Medical Center v. Winnebago County,* 58 Wis.2d 260, 206 N.W.2d 198 (1973).

In *Garcia v. Silverman,* 393 Fed. Supp. 590 (E.D. Wis. 1975), the federal district court invalidated Milwaukee county's so-called "two-quit rule," adopted after the *Arteaga* case invalidated a "one-quit rule." The policy at issue in *Garcia* denied general relief to applicants who had voluntarily quit two jobs and the federal court held that it violated due process because it created an irrebuttable presumption that otherwise eligible applicants are unwilling to comply with 49.02, Stats., which provides that the refusal of a bona fide offer of employment without good cause or acceptance and subsequent inadequate performance through willful neglect "shall necessitate that local, municipal or county welfare officials discontinue general relief payments to such an individual. . . ." In *Daubert v. Schmidt,* Case No. 73–C–11 (E.D. Wis. 1973) (unpublished), state welfare officials were permanently enjoined from denying categorical aids to otherwise eligible applicants merely because they are recipients of general relief. The issue in that case was the exact reverse of the issue in the case before us.

■

The county argues that in this case its policy of denying general relief to AFDC recipients is supported by the language of ch. 49. It argues that AFDC benefits are not only "other means" under sec. 49.01(4), but that

they are means "sufficient to provide the necessary commodities and services" under sec. 49.01(4), because sec. 49.19(5)(a) provides that: "The (AFDC) aid shall be *sufficient* to enable the person having the care and custody of such children to care properly for them" (emphasis supplied). This sentence that AFDC payments "shall be sufficient" has survived unchanged since the original creation of aid to dependent children. R.S. 1898, ch. 573. As first enacted, aid to dependent children was awarded on a case-by-case determination of need. However, at present, AFDC is awarded as a flat grant. Sec. 49.19(11)(a) sets a standard of need which is supposed to represent the minimum subsistence level. *Alvarado v. Schmidt,* 317 F. Supp. 1027 (E.D. Wis. 1970). Federal law requires that this standard of need be periodically adjusted to reflect changes in the cost of living.[6] However, the states are permitted to establish a level of benefits that is lower than the standard of need, and recently Wisconsin decreased the level of benefits to 85 percent of the standard. Ch. 29, Laws of Wis. 1977. Thus, although the legislature has left unchanged the language stating that AFDC payments "shall be sufficient," the determination of what such sufficient aid shall be in a particular case is now made by reference to area and family size, and not on an individual basis. On the other hand, general relief has consistently been regarded as relief to be conferred on a case-by-case basis. *State ex rel. Sell v. Milwaukee County, supra, State ex rel. Arteaga v. Silverman, supra.*

Contrary to the county's absolute rule against fuel relief to AFDC recipients are both federal and state regulations that expressly permit AFDC recipients to receive general relief. Federal Health, Education and Welfare (HEW) rules permit states to supplement AFDC as-

---

[6] 42 USC 602(a)(23) (1974).

sistance with other forms of assistance as long as no duplication in assistance occurs. 45 CFD 233.20(a)(3) (vii) (1976). This regulation states that "grants by other agencies in an amount sufficient to make it possible for the individual to have the amount of money determined to be needed, in accordance with the public assistance agency standard (of need), will not constitute duplication." Accordingly, the state department of health and social services Income Maintenance Manual permits "payments received by AFDC recipients from general relief and from church-related or other charitable organizations" to supplement AFDC benefits as long as the amount provided does not exceed the difference between the payment level and the standard of need. Department of Health and Social Services Maintenance Manual, III–C–24 (March 5, 1976). Although the department and the county appear to disagree on whether these regulations permit supplementary assistance up to the standard of need as determined on an annual or a monthly basis, the mechanics of the regulations are irrelevant for purposes of this appeal. However, the petitioner points out in the appendix to her brief, a communication under date of January 14, 1977, to Mr. Silverman, one of the appellants, from the Department of Health and Social Services states that the welfare agency could determine the maximum amount of AFDC payment deficit accrued by the recipient for twelve months and issue any amount of general relief supplementation up to that maximum amount without encountering the issue of duplication. This communication also stated that "it should be emphasized that these emergency fuel payments from county general relief funds are considered to be exception circumstances and are in no way regarded by the state as meeting normal on-going fuel needs. . . ." Thus, neither the federal nor state agencies charged with administering

AFDC consider an absolute ban on general relief to be required by the relevant statutes.

The closest this court has come to stating the relationship between general assistance and AFDC is *Cleveland v. Industrial Commission*, 232 Wis. 147, 286 N.W. 558 (1939). In *Cleveland*, the Pickett family received a mother's pension (aid to dependent children), administered by the town of Cleveland. Although the family moved to Chetek, Mrs. Pickett continued to receive the monthly pension from Cleveland until April 3, 1934. On April 11, 1934, the family received its first general assistance grant from Chetek. When Chetek tried to recover from Cleveland the amount of general assistance it awarded to the Picketts, Cleveland argued that the general relief furnished by Chetek was illegal and relied on the following language in the aid to dependent children program: "Aid pursuant to this section shall be the only form of public assistance granted to the family, except medical and dental aid, and no aid shall continue longer than one year without reinvestigation."[7]

This court rejected Cleveland's contention and held that a provision in the aid to dependent children program cannot absolve Chetek from the performance of its statutory duty to provide general relief to all dependent persons. The court held the statutory prohibition in the aid to dependent children program against other "public assistance" operated only on the officials who dispense aid to dependent children and not on those who dispense general relief. The court then found that although the Picketts received a monthly mother's pension payment just a few days before receiving general relief, they were nonetheless dependent and therefore Chetek was required to award them relief:

---

[7] This sentence was finally removed from the AFDC statutes in 1965. Ch. 450, Laws of 1965.

"The evidence well warranted the commission's findings that when the first relief was furnished by the town of Chetek on April 11, 1934, Clayton Pickett stood in dire need of poor relief by reason of the fact that the $30 paid to Mrs. Pickett on April 3, 1934, as mother's pension money, and which was the last payment she ever received, had not been sufficient to pay bills of the previous month, and that the groceries and necessities of life of the family were very low and insufficient to provide for them. As there were no resources or other income, and the last check ever received as mother's pension was insufficient to even pay the previous month's bills, there were clearly no funds or means of support available when the town of Chetek furnished the poor relief on April 11, 1934. Consequently, it was not only necessary, but it was clearly the statutory duty of the town of Chetek, under sec. 49.03(1), Stats., to provide that relief upon Pickett's sworn statement as to his legal settlement." 232 Wis. at 150–151.

*Cleveland* supports the view that general relief and AFDC are not mutually exclusive. *Cleveland* also shows that the provisions for general relief are to be construed independently of the provisions for aid to dependent children. Despite the fact that the aid to dependent children program contained a provision stating that such aid shall be sufficient and a provision that other public assistance is prohibited, the court nonetheless held that Chetek was required to confer general relief. In the case before us, the mere labeling of AFDC payments by the county as "sufficient" does not necessarily make them so, as the facts in this case stipulated to by the parties so clearly demonstrate.

The county argues that if AFDC recipients are eligible for general relief, they will be able to obtain more aid than they are entitled to merely by squandering their AFDC benefits to make themselves "dependent." As stated in the county's brief, "General assistance frequently referred to as the program of last resort, was

never intended to, in effect, bail out those persons who merely do not make ends meet." However, as the petitioner herself points out, the AFDC program contains its own safeguards against improvident recipients. While such recipients are normally provided unrestricted grants under sec. 49.19(1)(c), Wis. Stats. (1975) and Wis. Adm. Code PW–PA 20.11(2), county welfare agencies have authority to provide grants in the form of restricted voucher or vendor payments or to appoint a protective payee where recipient mismanagement shows an inability or an unwillingness to properly manage funds. No claim of mismanagement or improvidence is made by the county in the case of the petitioner.

Petitioner in her brief points out,

"Petitioners do not claim that all AFDC grants must be supplemented to make up the difference between the payment level and the standard. Nor do they claim that AFDC grants can never be the 'other means' by which a person is removed from the definition of 'dependent person.' "

For some recipients, AFDC benefits and other categorical aids may constitute sufficient other means so as to make them non-dependent and ineligible for general relief. General relief can only be granted as stated in sec. 49.01(1), Stats., which reads in part,

"The relief furnished . . . shall be at such times and in such amounts, as will in the discretion of the relief official or agency meet the needs of the recipient and protect the public."

The amount of any such aid given for fuel relief will depend on the facts of the individual case. As the petitioner, in her brief, states,

"Petitioners suggest that a fuel-related emergency, especially in the midst of a harsh Wisconsin winter, is precisely the type of emergency in which general relief, the program of last resort, should be utilized to meet unusual circumstances."

In circumstances such as a winter fuel crisis, an AFDC recipient whose need is both temporary and extraordinary may be entitled to general relief. The general relief statutes make clear that eligibility in the first instance must depend on a factual determination of the applicant's circumstances and not on a policy that makes him ineligible as a matter of law.[8]

In its judgment granting the writ of mandamus, the trial court did not command that general relief be granted but only that emergency general relief cannot be denied on the basis of an absolute policy prohibiting the furnishing of general relief to AFDC recipients to enable them to maintain fuel oil in their homes. Under these facts we affirm.[9]

*By the Court.*—Judgment affirmed.

[8] Since the trial court granted the writ of mandamus in this case, the legislature has taken action regarding emergency fuel relief. Effective February 25, 1977, the legislature created sec. 59.07(98), Wis. Stats. by ch. 2, sec. 5, Laws of 1977, which empowers county boards to appropriate money for emergency energy relief. Effective June 29, 1977, the legislature created sec. 49.055 by ch. 29, sec. 578(d) Laws of 1977, relating to fuel and utility emergencies for assistance in those areas. This was introduced as Senate Bill 77, the Biennial Budget Bill. In passing the bill, the legislature failed to pass Assembly Substitute Amendment 1 to Senate Bill 77 which would have amended sec. 49.01(4), Wis. Stats. which defines "dependent person" to add the following phrase, ". . . except that no person receiving aid under sec. 49.19 (the AFDC program) shall be considered 'dependent' for purposes of receiving general relief." The refusal of the legislature to make AFDC recipients ineligible for such a program shows the intention of the legislature not to remove the possibility of AFDC recipients receiving general relief.

[9] The court also ordered that "a declaratory judgment be and hereby is entered declaring respondents absolute policy of refusing to provide general relief to AFDC recipients to maintain fuel in their homes violates respondents statutory duty to furnish relief to all eligible dependent persons within the county . . ."