Herbert A. CLARK, Individually, and on behalf of all other's similarly situated, Plaintiffs-Appellants,

v.

MILWAUKEE COUNTY and Milwaukee County Department of Social Services, Defendants-Respondents.

Supreme Court

*No. 93–1695. Oral argument September 9, 1994.—Decided December 7, 1994.*

(Also reported in 524 N.W.2d 382.)

For the plaintiffs-appellants there were briefs (in the court of appeals) by *Patricia M. Cavey* and *Legal Aid Society of Milwaukee, Inc.* and *Jeffery R. Myer* and *Legal Action of Wisconsin, Inc.*, all of Milwaukee and oral argument by *Jeffery R. Myer*.

For the defendants-respondents there was a brief (in the court of appeals) by *John Jorgensen,* corporation counsel, Milwaukee and oral argument by *John Jorgensen.*

JANINE P. GESKE, J. This case is before the court on a petition to bypass the court of appeals, pursuant to § (Rule) 809.60, STATS. In February, 1990, Herbert A. Clark (Clark), a homeless resident of Milwaukee County (the County) and a recipient of general relief since January, 1990, filed a class action on behalf of himself and other County homeless residents who had applied for or received general relief. The suit alleged two statutory and two constitutional claims:

(1) Milwaukee County does not have a written standard of need for housing, as required by § 49.02(1m), STATS.[1]

---

[1] Section 49.02(1m), STATS., provides as follows:

**49.02 General relief administration. (1m)** Every county shall furnish general relief to all eligible dependent persons within the county and shall establish or designate a general relief agency to administer general relief. The general relief agency shall establish written criteria to be used to determine dependency and shall establish written standards of need to be used to determine the type and amount of general relief to be furnished. The general relief agency shall review the standards of need at least annually.

(2) Milwaukee County's shelter policy violates the duty to provide general relief for housing that is adequate for health and decency under § 49.01(5m), STATS.[2]

(3) Milwaukee County's shelter policy is a violation of equal protection because it denies general relief for housing to homeless persons too poor to incur prior expenses in order to obtain a rent receipt and, thus, is not rationally related to a legitimate government purpose.

(4) Milwaukee County's shelter policy deprives those who receive general relief, as single individuals, of property without due process of law by failing to provide the minimum benefit level specified in § 49.032(1)(c), Stats.[3]

The general relief agency may establish work-seeking rules for general relief applicants and recipients.

[2] Section 49.01(5m), STATS., provides as follows:

**49.01 Definitions.** As used in this chapter:

. . .

**(5m)** 'General relief' means such services, commodities or money as are reasonable and necessary under the circumstances to provide food, housing, clothing, fuel, light, water, medicine, medical, dental, and surgical treatment (including hospital care), optometrical services, nursing, transportation, and funeral expenses, and include wages for work relief. The food furnished shall be of a kind and quantity sufficient to provide a nourishing diet. The housing provided shall be adequate for health and decency. Where there are children of school age the general relief furnished shall include necessities for which no other provision is made by law. The general relief furnished, whether by money or otherwise, shall be at such times and in such amounts, as will in the discretion of the general relief official or agency meet the needs of the recipient and protect the public.

[3] Section 49.032(1)(c), Stats., provides:

**49.032 General relief benefits. (1)** (c) Each general relief agency shall determine need and make a benefit payment at least

Clark moved for partial summary judgment on these issues so as to enjoin the County from failing to meet its statutory and constitutional obligations. The circuit court denied Clark's motion and *sua sponte* granted summary judgment to the County, dismissing the action in March, 1991. The circuit court concluded that the County's policy directive regarding shelter allowances, No. I–0401–3,[4] minimally satisfied statu-

---

monthly. Benefit payments for an eligible dependent person without other sources of income or resources, except as provided under s. 49.06(1), shall be based on the following minimum monthly schedule: . . .

| Case size | Benefit amount |
|-----------|----------------|
| 1 | $175 |
| 2 | 298 |
| 3 | 352 |
| 4 | 412 |
| 5 | 474 |

[4] Policy directive No. I–0401–3 states in part:

When a single person applies for or receives General Assistance and has a *verifiable shelter need,* he/she is entitled to a shelter allotment. The allotment maximum is $98.00 effective July 1, 1988. The shelter amount being granted is based on the household composition, the application declared living arrangement and the verifiable shelter need (rent receipt). A G–1–0 [a single person] living in public or subsidized housing may receive the shelter allotment maximum although their actual rent amount is less than $98.00.

For a renter, a verifiable shelter need is based in part on a current rent receipt which includes the date of payment, address of the rental unit, amount of rent and the signature of the owner or manager of the rental property. Renters may not receive a shelter allowance in excess of the maximum amounts. If a question arises regarding the owner or manager of a property, an answer may be obtained from the Tax Commissioner's Office in the appropriate city. . . .

tory requirements by providing guidelines for the administration of benefits. The court stated that though these guidelines were not based upon what is necessary to secure housing adequate for health and decency in the community, § 49.01(5m), Stats., granted the County the discretion to determine how much relief to dispense and in what form. Such discretionary language, according to the court, allowed the County to cap off the maximum to be paid, even if a recipient's actual needs appeared to be greater. In sum, the circuit court found that were it not for the policy directive and statutory discretion, the County would have been in violation of § 49.02(1m), since no written standards exist which describe what would be necessary to obtain adequate and decent housing in the community.

Clark appealed from the circuit court order and judgment to the court of appeals. The same issues were certified by the court of appeals to this court in 1992. In a *per curiam* opinion, this court reversed the order of the circuit court and remanded with instructions to hold an evidentiary hearing regarding the County's alleged practice of requiring a current rent receipt before remitting the shelter allowance to a general relief recipient. Specifically, the County's shelter policy directive No. I–0401–3 stated that a shelter allowance would be provided to recipients who produced a *current* receipt for rent *paid.* However, that provision was contrary to an unpromulgated exception, known to very

> For a home owner, a verifiable shelter need is based in part on the current property tax bill, utility bills, a record of the mortgage and/or insurance payments and upkeep expenses. These mortgage related expenses are applicable to both single family units and home property rental units. . . . Homeowners may not receive a shelter allowance in excess of the maximum amounts.

(Emphasis in original.)

177

few, if any, case workers or recipients, which allowed for the submission of a *prospective* rental statement[5] in order to secure the shelter allowance. The circuit court, therefore, was to assess whether the contrary policies violated equal protection.

A two-day hearing was held in the circuit court in February, 1993. Thereafter, the circuit court issued a supplemental decision and order which found that a decent single room is not available in Milwaukee County for the $98.00 shelter allotment given to general relief recipients, whether homeless or not. The court held that such a finding, however, is legally irrelevant because § 49.01(5m), Stats., provides the County with discretion to determine the needs of relief recipients. Therefore, the court said it was powerless to require an increase in the shelter allowance. Further, according to the circuit court, the statutory language stating that housing provided shall be "adequate for health and decency" refers to situations when the dispensing agency provides actual housing rather than cash to secure housing.

Regarding the constitutional claims, the circuit court's findings remained the same as in its original decision and order. First, Clark is entitled to that sum which the legislature has determined should be granted, plus additional sums established by the County in its discretion. However, requiring a rent receipt before a recipient is provided with a shelter allowance does not deprive the recipient of his or her constitutional rights. Second, providing a shelter allowance only to those who furnish a current rent

_____

[5] A prospective rental statement is signed by a landlord to indicate that he/she will rent to the recipient at some point in the future for a certain amount per month. This policy, however, is not described in any of the County's shelter policy directives.

receipt is a legitimate public interest classification, since protecting the public coffers is a legitimate act and goal of the Department of Social Services.

In a renewed appeal, Clark sought to bypass the court of appeals to raise again those issues which were accepted previously on certification to this court. We granted bypass and now hold:

(1) The statutory discretion conferred by § 49.01(5m), Stats., does not mean that the County may refuse to promulgate written standards of need for the general relief program, as required by § 49.02(1m), Stats.

(2) The County may, in its discretion, establish a cap for the shelter allowance provided to general relief recipients. However, the cap, reflecting the written standards, must be set at or above the assessed need for decent and adequate housing.

(3) Any policy directive for housing established by the County must clearly inform all general relief recipients that either a prospective rental statement or a current rent receipt is acceptable in order to secure the shelter allowance.[6]

## STATUTORY DISCRETION UNDER § 49.01(5m), STATS.

We are asked to determine whether the County's conduct in administering the general relief program violates §§ 49.01(5m) and 49.02(1m), Stats. Such an analysis requires the interpretation of statutes, which is a question of law. *State ex rel. Hodge v. Turtle Lake,*

---

[6] The promulgation of written standards of need and the revision of the County's shelter policy directive will make it unnecessary for this court to rule on the constitutional issues raised by Clark.

180 Wis. 2d 62, 70, 508 N.W.2d 603 (1993). Questions of law are decided *ab initio* by this court. *Id.* When interpreting statutes, we first look to the language. *Village of Shorewood v. Steinberg,* 174 Wis. 2d 191, 201, 496 N.W.2d 57 (1993). "If that language is clear and unambiguous, our inquiry ends, and we must simply apply that language to the facts of the case." *Id.* It is only when the statutory language is ambiguous that we resort to judicial construction to ascertain and carry out the legislative intent. *Id.*

General relief is a state-mandated and county-administered benefit program which is governed entirely by statute. *See State ex rel. Sell v. Milwaukee County,* 65 Wis. 2d 219, 232–33, 222 N.W.2d 592 (1974) (Robert W. Hansen, J., dissenting). Prior to 1975, general relief in Milwaukee County was provided through a system of specific payments for individual recipients' needs. In 1975, the County changed the benefit program in order to provide unrestricted flat cash grants. Thus, in 1991, relief for a single individual (a general assistance unit of one) was $107.00 as a basic allowance and $98.00 as a shelter allowance, for a total of $205.00.

The County, citing § 49.01(5m), Stats., argues that the statute gives it the discretion to set the amount of a grant and determine when it will be paid:

> The general relief furnished, whether by money or otherwise, shall be at such *times and in such amounts,* as will in the discretion of the general relief official or agency meet the needs of the recipient and protect the public.

Section 49.01(5m), Stats. (emphasis added). Further, the County claims that § 49.01(5m) is *in pari materia* with § 49.02(1m), which requires that

> [t]he general relief agency shall establish written criteria to be used to determine dependency and shall establish written standards of need to be used to determine the type and amount of general relief to be furnished.

██

We disagree with the County's arguments and conclude that the "times and amounts" language in § 49.01(5m) unambiguously refers to the County's discretion to make periodic relief payments during a month. The language does not preempt the mandate in § 49.02(1m) which requires the promulgation of written standards of need in order to determine an amount sufficient to secure adequate housing.

The County also claims that the discretion vested by § 49.01(5m) allows it to maintain written benefit payment levels in lieu of written standards of need for housing. Again, we disagree. Written benefit levels are not the equivalent of written standards of need. Benefit levels are recommended by administrators of the Department of Social Services during the County's annual budget process. Criteria used to set those levels include: (a) the expected number of recipients, (b) the total cost of general relief in preceding years, (c) other departmental expense, (d) the increase or decrease in the departmental budget, and (e) the effect of the benefit level on property taxes.

By contrast, written standards of need must focus upon the quality and quantity of rental units available to those in need of the general relief shelter allowance. The County is in the best position to make that assessment based upon an examination of rental units available within its boundaries. It is the responsibility of the County, therefore, to set minimum standards for adequate and decent housing and then use those stan-

dards to objectively establish the shelter allowance which will be paid to eligible recipients.

■ We acknowledge that the County has a responsibility to set a shelter allowance which does not endanger the public coffers. We also are mindful that state-mandated programs, such as general assistance, put a financial burden upon county budgets. County boards continually struggle to contain property taxes while attempting to meet the significant demands of the many critical programs and institutions administered by them. However, the legislature has not vested counties with the discretion to ignore the housing needs of general relief recipients. Consequently, the County has a statutory obligation to provide "services, commodities or money as are reasonable and necessary under the circumstances." Section 49.01(5m), Stats. Further, the housing provided, whether it is in the form of actual housing or funds to secure a rental unit, must be adequate for health and decency.

It is important to note that the $98.00 shelter allowance cap is not *per se* unreasonable, though evidence in the record makes it clear that $98.00 per month cannot support even minimally adequate housing. For example, the circuit court received testimony that for approximately $98.00 per month, only the most uninhabitable housing was available. One such single-room unit was located above a tavern, had a bed which smelled of urine, cracked walls, dresser, dirty curtains and carpet, inadequate heating, and was infested with roaches and mice. By contrast, $200.00 per month plus a $50.00 security deposit was required to obtain an unfurnished one-room unit which had a sink, light fixture, shared bathroom facilities, and a shared kitchen area supplied with vending machines but no cooking

facilities. Had the County complied with § 49.02(1m), Stats., by producing written standards of need, it would have been evident that the shelter allowance of $98.00 was insufficient to secure housing adequate for health and decency.

## RELIEF REQUIREMENTS MUST BE AVAILABLE TO ALL RECIPIENTS

In his complaint, Clark alleges that the County's policy directive No. I–0401–3 violates the equal protection clause of the fourteenth amendment because it irrationally prevents homeless dependent persons, who are too poor to rent, from becoming eligible for general relief. In effect, a "Catch 22" is imposed upon recipients: in order to receive the shelter allowance, recipients must supply a *current* receipt for rent paid; however, they need the shelter allowance because they do not have the funds to pay rent in the first place. Further, Clark claims that the policy directive does not disclose to all recipients the County's alleged practice of providing the shelter allowance to those who submit a *prospective* rental statement.[7] To highlight this discrepancy, Clark refers to the pertinent language of policy directive No. I–0401–3:

> For a renter, a verifiable shelter need is based in part on a current rent receipt which includes the date of payment, address of the rental unit, amount of rent and the signature of the owner or manager of the rental property.

[7] The circuit court found that an unpromulgated exception exists which is not disclosed in the policy directive. Nor is the exception disclosed orally to recipients "[e]ither [because] the case worker is unaware of this exception or for whatever reason fails to mention same to the great bulk of homeless applicants."

The County argues that there is neither an equal protection violation nor a "Catch-22" because the County in fact maintains a policy of providing the shelter allowance to relief recipients who are able to submit a prospective rental statement.

■■■

However, the County admits that its policy of accepting prospective rental statements is not a model of clarity or grammar. In fact, at best, the existence of this policy can only be inferred from any of the existing policy directives on housing for general relief recipients.[8] We now hold that *any* policy directive regarding the general relief shelter allowance established by the County must clearly inform all applicants that either a prospective rental statement or a current rent receipt is acceptable to prove the need for the shelter allowance.[9]

Section 49.02(1m), Stats., obligates the County to provide general relief to all eligible dependent persons. A "dependent person" is defined in § 49.01(2) as

---

[8] For example, policy directive No. G–0315–1 states in pertinent part:

**Shelter Allowance**

In order for the homeless applicant/recipient to receive a shelter allowance, s/he must verify an address (not a temporary shelter) where they are required to pay rent. A shelter notification form (F0315-1) will be given to homeless individuals to assist them in securing an established residence by informing the landlord of the individual's eligibility for General Assistance. Homeless recipients must report the securing of an address in person for verification purposes.

[9] If the County chooses to recognize other forms of proof to secure the shelter allowance, a full description of the means of proof must be in writing and provided to all shelter applicants.

an individual without the presently available money, income, property or credit, or other means by which it can be presently obtained, excluding the exemptions set forth under s. 49.06, sufficient to provide the necessary commodities and services specified in sub. (5m).

"The determination of whether an applicant for relief is a 'dependent person' . . . is a question of fact that is not left to the discretion of local welfare officials." *State ex rel. Tiner v. Milwaukee County,* 81 Wis. 2d 277, 283, 260 N.W.2d 393 (1977) (citing *Outagamie County v. Town of Brooklyn,* 18 Wis. 2d 303, 311, 118 N.W.2d 201 (1962)). Though the amount and kind of relief is within the discretion of County officials,[10] the commodities, services or money provided must be, according to § 49.01(5m), reasonable and necessary under the circumstances. It is, therefore, incumbent upon the relief-administering agency to (a) examine the circumstances which imposed the need for relief, (b) establish and promulgate written standards of need which will support the level or type of relief supplied, and (c) provide housing, whether in the form of actual housing or a shelter allowance, which is adequate for health and decency. The existing written benefit payment levels do not meet the requirements imposed by either § 49.01(5m) or § 49.02(1m). Consequently, this case must be remanded for further proceedings, at which time the circuit court will order the County to promulgate written standards of need for housing and revise policy directive No. I–0401–3 to clearly state that a prospective rental statement is acceptable proof to secure the shelter allowance.

*By the Court.*—The order and judgment of the circuit court are reversed, and the cause is remanded to

---

[10] *Tiner,* 81 Wis. 2d at 284 (citing *Sell,* 65 Wis. 2d at 224).

the circuit court for further proceedings consistent with this opinion.