STATE of Wisconsin, Plaintiff-Respondent,

v.

Fred J. O'DELL, Defendant-Appellant-Petitioner

Supreme Court

*No. 93–2294–CR. Oral argument April 6, 1995.—Decided June 9, 1995.*

(Also reported in 532 N.W.2d 741.)

For the defendant-appellant-petitioner there were briefs and oral argument by *Reesa Evans,* Madison.

For the plaintiff-respondent the cause was argued by *Mary E. Burke,* assistant attorney general, with whom on the brief was *James E. Doyle,* attorney general.

JANINE P. GESKE, J. The petitioner, Fred J. O'Dell (O'Dell), requests review of an unpublished decision of the court of appeals filed April 21, 1994, which affirmed the judgment and order of the circuit court for Dane County, Robert A. DeChambeau, Circuit Judge, convicting O'Dell of violating a child abuse injunction issued pursuant to § 813.122(5)(a), Stats.,[1] as a

---

[1] Section 813.122(5)(a), Stats., provides as follows:

**813.122   Child abuse restraining orders and injunctions.**

. . .

   . . .

   **(5)**   INJUNCTION. (a) A judge may grant an injunction ordering the respondent to avoid the child victim's residence or any premises temporarily occupied by the child victim or both, and to avoid

contacting or causing any person other than a party's attorney to contact the child victim unless the petitioner consents to that contact in writing and the judge agrees that the contact is in the best interests of the child victim, if all of the following occur:

1.   The petitioner files a petition alleging the elements set forth under sub. (6)(a).

2.   The petitioner serves upon the respondent a copy of the petition and notice of the time for hearing on the issuance of the injunction, or the respondent serves upon the petitioner notice of the time for hearing on the issuance of the injunction.

3.   After hearing, the judge finds reasonable grounds to believe that the respondent has engaged in, or based upon prior conduct of the child victim and the respondent may engage in, abuse of the child victim.

[2] Section 939.62, Stats., provides in pertinent part:

**939.62   Increased penalty for habitual criminality. (1)** If the actor is a repeater, as that term is defined in sub. (2), and the present conviction is for any crime for which imprisonment may be imposed (except for an escape under s. 946.42 or a failure to report under s. 946.425) the maximum term of imprisonment prescribed by law for that crime may be increased as follows:

(a)   A maximum term of one year or less may be increased to not more than 3 years.

(b)   A maximum term of more than one year but not more than 10 years may be increased by not more than 2 years if the prior convictions were for misdemeanors and by not more than 6 years if the prior conviction was for a felony.

(c)   A maximum term of more than 10 years may be increased by not more than 2 years if the prior convictions were for misdemeanors and by not more than 10 years if the prior conviction was for a felony.

**(2)**   The actor is a repeater if the actor was convicted of a felony during the 5-year period immediately preceding the commission of the crime for which the actor presently is being sentenced, or if the actor was convicted of a misdemeanor on 3 separate occasions during that same period, which convictions remain of record and unreversed. It is immaterial that sentence was stayed, withheld or suspended, or that the actor was pardoned, unless such pardon was granted on the ground of innocence. In computing the preceding 5-year period, time which the actor spent in actual confinement serving a criminal sentence shall be excluded.

ance before the circuit court resulted from an alleged violation of an injunction issued on May 29, 1991, by Dane County Circuit Judge Susan Steingass. According to the terms of the injunction, O'Dell was enjoined from (1) having contact with his stepson, Michael E. (Michael), whom he had physically abused; and (2) having contact with the apartment where Michael lived with his mother and two stepsisters.

The injunction was to remain in effect until May 28, 1993. However, on January 30, 1992, the police observed O'Dell inside the apartment where Michael and his mother lived. (At the time, O'Dell was married to Michael's mother.) O'Dell was arrested and subsequently convicted of knowingly violating the second prong of the injunction by residing at the apartment. O'Dell consistently argued, during a trial to the bench and on appeal, that he did not violate the terms of the injunction because, he claimed, Judge Steingass orally interpreted and modified the terms of the injunction in June 1991 to restrict contact with Michael, as opposed to contact with Michael's residence. Therefore, if any violation occurred, according to O'Dell, it was due to a misunderstanding of Judge Steingass's oral statements, and the defense of mistake should apply. Both the circuit court and the court of appeals rejected this argument, concluding, *inter alia,* that only the written order issued by Judge Steingass in May 1991 constituted the injunction.

O'Dell presents three issues for review by this court:

In July 1991, O'Dell was charged with physical abuse of a child, in violation of § 948.03(2)(b), Stats. This charge was later amended to battery, in violation of § 940.19, Stats. Prior to this charge, O'Dell had been convicted of numerous other offenses.

(1)  Whether the defense of mistake should apply to bar prosecution;

(2)  whether, as a matter of law, the state introduced sufficient evidence to convict O'Dell; and

(3)  whether O'Dell's trial counsel was ineffective. Underlying these three issues is the question of whether Judge Steingass's oral statements on the record modified the previously issued written injunction. We reverse the decision of the court of appeals and hold: (1) Judge Steingass's oral statements on the record modified her "no contact" order to change the terms of the written injunction, and (2) though Judge Steingass should have committed to writing any oral modifications regarding the terms of the written injunction, O'Dell had a right to rely on the issuing court's pronouncements. As a result of our holdings, we remand for a new trial and provide the state with the opportunity to amend the criminal complaint. Since there will be a new trial to determine if O'Dell violated the terms of the modified injunction, we need not address the other issues raised in the petition for review.

The facts of this case are as follows. In May 1991, Michael claimed that O'Dell was physically abusing him. Michael sought an injunction to enjoin O'Dell from having any further contact with him.[3] Judge Steingass issued the injunction on May 29, 1991, pursuant to § 813.122(5)(a), Stats. O'Dell failed to appear at the hearing, and the written injunction was entered by default with the following terms and conditions: (1) O'Dell was ordered to avoid Michael's residence and/or any premises temporarily occupied by Michael, and (2)

---

[3] By April 1991, Michael was 17 years old. Believing he was old enough to try to take control of the situation, he enlisted the help of a guardian ad litem in order to seek the injunction.

he was not to have any direct or indirect contact with Michael.[4] At the time the injunction was issued, Michael was residing in an apartment with his mother, O'Dell, and O'Dell's two daughters.

On June 27, 1991, O'Dell moved to modify the terms of the injunction.[5] Though the motion to modify was denied, the following exchange took place during the course of the hearing:

THE COURT: ...
Mr. O'Dell, this injunction provides as follows: That you are to avoid Michael['s] residence and/or any premises temporarily occupied by him now and

---

[4] During a June 27, 1991, hearing on a motion to modify the injunction, O'Dell stated that even though he had notice of the May 29, 1991, hearing, he did not appear because he was unprepared, did not have an attorney to represent him, and was in the county jail at the time.

[5] According to the transcript from the hearing on the motion to modify the injunction, O'Dell actually sought to have the injunction dissolved and the action dismissed. O'Dell first claimed that he was never served with a copy of the restraining order so as to be informed of its terms. Counsel for Michael stated that she believed O'Dell was served with the injunction in the county jail, after he failed to appear at the original hearing and that even if that did not occur, service would be proper at the June 27, 1991, hearing. Further, Michael's attorney claimed that O'Dell was aware of the conditions of the injunction through his wife. Second, O'Dell challenged the "no contact with the residence" aspect of the injunction because he ran a business from the apartment and was concerned for the safety of his two daughters. At the conclusion of the hearing, Judge Steingass denied O'Dell's requests to modify on these grounds.

During the trial to the bench on July 8, 1992, a deputy sheriff for Dane County testified that he both served O'Dell with the child abuse injunction on November 26, 1991, and explained its terms to him.

in the future. You are to have no contact direct or indirectly by any means, even through third persons with Michael . . .. Those are the terms of the injunction in essence.

. . .

MR. O'DELL: . . . If I were to go [to the apartment], I would be reported. [My wife] was to inform the police. Only way I could go there was when Michael wasn't there, and I had to run in and out when he appeared. From then till now, I haven't had free access to my property or my home.

THE COURT: . . .

What do you want to be able to do, maybe we can figure out how to accommodate the problem? . . .

Why don't you tell me what it is you want and we will see if we can work it out.

. . .

Mr. O'Dell, do you have Michael's work schedule so you know when you can be there, or when you can't?

MR. O'DELL: No, Your Honor, I am concerned about my daughters as well.

THE COURT: Sure, sure of course you are, let's see if we can work that out.

Can you tell us Michael's work schedule, times in which Mr. O'Dell can be at the house without being—

. . .

This [injunction] is something that involves you and Michael. And what we can do is get Michael's work schedule so you know when you can be [at the apartment] without being in risk of violating this injunction.

The judge's oral statements about the injunction during the hearing were not incorporated into the written injunction.

On January 30, 1992, a Dane County Sheriff's Department detective saw O'Dell inside Michael's apartment while there to check on the residency of O'Dell. When the detective knocked on the door, O'Dell answered, wearing pajama bottoms and no shirt. Aware that a restraining order had been issued, the detective arrested O'Dell. In a criminal complaint filed January 31, 1992, O'Dell was charged with the misdemeanor of knowingly violating the written injunction's terms by residing at Michael's home.

During a bench trial,[6] Michael testified it was possible that, on or about January 30, 1992, he and O'Dell were in the apartment at the same time. Further, according to Michael, O'Dell kept clothing and other possessions at the residence. When O'Dell's attorney attempted to elicit testimony from Michael regarding O'Dell's motion to modify the injunction in June 1991, the following exchange between the court and counsel occurred:

THE COURT: But the issue, as I understand it, is the elements are three—that an injunction was issued, one; that the defendant committed an act that violated the terms of the injunction, two; and three, that the defendant knew that the injunction had been issued and knew that his acts violated its terms.

. . .

MS. DAVEY [O'Dell's Attorney]: Well, as I understand it, what Mr. O'Dell is charged with is knowingly violating a restraining order. He was served with a restraining order on November 26th. However, I think what information was provided to Mr. O'Dell at the June 27th hearing goes to,

---

[6] O'Dell waived his right to a jury trial prior to jury selection.

whether he knew whether he was violating the restraining order or not, the knowledge of what the restraining order was.

THE COURT: Well, his knowledge of what the restraining order was is contained in this document signed by Judge Steingass. That is the injunction. That is the restraining order. That's what he is prohibited from doing.

I have read over these transcripts in anticipation of you entering them, and you know, there's a lot of talk by a lot of people at that hearing, most of which is not relevant to anything. Either he was enjoined or he wasn't, and the terms of that injunction as I understand the law in Wisconsin was on that injunction, right or wrong, what is written on that injunction is what you're prohibited from doing, not gratuitous statements by social workers, attorneys, or everybody in the world, or for that matter, gratuitous statements from the judge. What is—what you're enjoined from doing is any acts that violate the written terms of the injunction.

O'Dell testified that on January 30, 1992, he was at the apartment, but he neither saw Michael there nor did he have contact with him anywhere else. Further, O'Dell stated that he kept many of his possessions at the apartment because he and his daughters operated a business from that location. Finally, O'Dell testified about his understanding of the terms of the injunction, stating, "I was to have no contact with Michael . . ., that he was to provide me with a schedule of his work activities so that I could be at the residence when he wasn't there."

At the conclusion of the trial, the court made the following findings: (1) a written injunction was issued by Judge Steingass, enjoining O'Dell from contact with Michael and Michael's residence; (2) O'Dell violated

the terms of the injunction by living at Michael's home; and (3) the language of the written document gives the injunction effect, not an oral interpretation in a subsequent hearing which may have affected O'Dell's understanding of the injunction's terms. As a result, the circuit court found O'Dell guilty of one count of a violation of § 813.122, Stats., and sentenced him to eight months in the Dane County jail, with Huber privileges. O'Dell's postconviction motion for a new trial on the grounds of ineffective assistance of counsel was denied by the circuit court.

The court of appeals affirmed the judgment of the circuit court and held: (1) there was sufficient evidence to convict O'Dell of violating the terms of the injunction; (2) evidence of O'Dell's presence at the apartment on dates other than January 30, 1992, was admissible under § 904.04(2), Stats.; (3) the claim that trial counsel was ineffective had no merit; and (4) the defense of mistake did not apply because evidence existed for the circuit court to find that O'Dell violated the injunction, both as written and as he understood it.

The threshold issue in this case is whether the oral statements made by Judge Steingass during the hearing on the motion to modify the injunction in June 1991 modified the terms of the written injunction. This issue presents a question of law which the court reviews *de novo. See Clark v. Milwaukee County,* 188 Wis. 2d 171, 179–80, 524 N.W.2d 382 (1994).

"Injunction" has been defined as

[a] prohibitive, equitable remedy issued or granted by a court at the suit of a party complainant, directed to a party defendant in the action, or to a party made a defendant for that purpose, forbidding

the latter from doing some act which he is threatening or attempting to commit, or restraining him in the continuance thereof, such act being unjust and inequitable, injurious to the plaintiff, and not such as can be adequately redressed by an action at law.

*Black's Law Dictionary* 784 (6th ed. 1990). Further, " '[i]t is an elementary rule of law that the granting or refusal of a temporary injunction is a matter lying within the discretion of the trial court, and its determination in regard thereto will not be upset on appeal unless an abuse of discretion is shown.' " *Akin v. Kewaskum Community Schools,* 64 Wis. 2d 154, 159, 218 N.W.2d 494 (1974) (quoting *Codept, Inc. v. More-Way North Corp.,* 23 Wis. 2d 165, 171, 127 N.W.2d 29 (1964)).

Here, the injunction in question was issued pursuant to § 813.122(5)(a), Stats., authorizing Judge Steingass to (1) grant the injunction, (2) enjoining O'Dell from having contact with Michael or his residence, (3) following the filing of a petition which alleged sufficient facts to show that O'Dell engaged in abusive behavior toward Michael. Judge Steingass's oral statements regarding the injunction's terms in June 1991 were proper because courts maintain the historic power to modify or vacate decrees " 'as events may shape the need.' " *See* 11 Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure,* § 2961 at 599 (1973) (quoting *United States v. Swift & Co.,* 286 U.S. 106, 114 (1932)). Thus, the "[p]ower to modify [an injunction is] reserved by its very terms, and so from the very beginning [goes] hand in hand with its restraints." *Swift & Co.,* 286 U.S. at 114.

The judge's oral statements regarding the injunction allowed O'Dell access to the apartment when

Michael was not at home. Though this permission was not incorporated into the written document, we conclude that it modified the injunction by changing one of the injunction's terms. As such, we further conclude that O'Dell had a right to rely upon Judge Steingass's oral pronouncements in order to understand the scope of the restraints placed upon him. We are mindful of the large number of domestic violence, harassment, and child abuse injunctions which circuit courts are called upon to issue. Quite often in these cases, many of the parties are unrepresented and have a myriad of questions for the court regarding the meaning of the injunction's terms. Though an explanation of the terms may be done *ad hoc,* we strongly encourage circuit courts to incorporate all oral modifications into the written injunction. Such a practice will alleviate disputes or confusion by parties subject to the order or by those responsible to carry out its effect.

Judge Steingass's oral modifications on the record to the terms of the injunction constituted an amendment of her previously issued written order. Since the state tried O'Dell for violating the original written injunction and not the amended version, we conclude that the real controversy has not been fully tried. *See State v. Wyss,* 124 Wis. 2d 681, 735, 370 N.W.2d 745 (1985). Therefore, pursuant to § 751.06, Stats., we reverse the decision of the court of appeals and remand for a new trial on the issue of whether O'Dell violated the injunction as modified. We also grant the state leave to amend the criminal complaint.

*By the Court.*—The decision of the court of appeals is reversed, and the cause is remanded to the circuit

court for further proceedings consistent with this opinion.